PEOPLE ex rel. EDELSTEIN v. WARDEN OF CITY PRISON.

(Supreme Court, Appellate Division, Second Department. December 30, 1912.)

1. HABEAS CORPUS (§ 30*)—EXTRADITION—CONSTITUTIONAL PROVISIONS—VARIANCE IN NAME.

Const. U. S. art. 4, § 2, provides that a person charged with crime, who shall flee from justice and be found in another state, shall, on demand of the. executive authority of the state from which he fled, be delivered up for removal to the state having jurisdiction. A warrant was issued in another state for the arrest of "Morris Edelson, alias Edelstein," and the warrant of extradition, signed by the Governor of this state, directed the delivery of Morris Edelson. *Held*, upon evidence that the prisoner had been known by both names, and that he was the person charged with the crime and demanded by the other state, that the mere fact that his

name was misspelled in the papers was not sufficient ground for his discharge on habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

2. HABEAS CORPUS (§ 92*)—EXTRADITION—EVIDENCE OF ALIBI.

Habeas corpus is not the proper proceeding to try the question of the guilt or innocence of the accused; and hence mere evidence of an alibi will not justify his discharge, where there is satisfactory evidence on the other side.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–89, 92–95; Dec. Dig. § 92.*]

3. NAMES (§ 16*)—SUFFICIENCY OF INDICTMENT—DESIGNATION OF ACCUSED—SPELLING OF NAME.

A name need not be correctly spelled in an indictment, if substantially the same sound is preserved.

[Ed. Note.—For other cases, see Names, Cent. Dig. §§ 12–14; Dec. Dig. § 16.*]

Appeal from Special Term, Kings County.

Habeas corpus by the People of the State of New York, on the relation of Morris Edelstein, against the Warden of the City Prison. From an order of the Special Term dated September 18, 1912, as modified by an order dated October 2, 1912, sustaining a writ of habeas corpus, the Warden appeals. Reversed, writ of habeas corpus quashed, and relator remanded to the Warden, to be by him turned over to the agent of the demanding state designated to receive him.

Argued before JENKS, P. J., THOMAS, CARR, WOODWARD, and RICH, JJ.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, and Harry G. Anderson, Asst. Dist. Atty., of New York City, on the brief), for appellant.

Isidore Cohen, of New York City, for respondent.

WOODWARD, J. The petition for the writ of habeas corpus is made by the managing clerk of relator's attorney, and sets forth in substance that Morris Edelstein is illegally detained by the respondent upon the charge of being a fugitive from the justice of the state of New Jersey, in that he is charged in the city of Paterson, N. J., with having committed the crime of arson on or about the 18th day of June, 1912. The petition also alleges on information and belief that Morris Edelstein was never in the city of Paterson, state of New Jersey, at any time, and more particularly on June 18, 1912. The return to the writ sets forth that Morris Edelstein is detained by the respondent under and by virtue of a commitment, dated the 18th day of August, 1912, made by Hon. Harry Miller, City Magistrate, Second Division, sitting in the Tenth District Court. The return includes the commitment, the affidavit on which the warrant was issued, the warrant for the arrest of "Morris Edelson, alias Edelstein," the examination before the City Magistrate, the warrant of John Keyes, Justice of the Peace, of Paterson, N. J., for the arrest of one Morris Edelson, bearing date of August 17, 1912, and the exemplified copy of the com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaint of John Tracey, charging Morris Edelson with willfully and maliciously setting fire to and burning a dwelling house. The return likewise includes the warrant of extradition in the usual form, signed by the Governor of this state, and directing the delivery of Morris Edelson to the agent of the state of New Jersey. No traverse to the return was made by the relator, but the court proceeded summarily to take proofs upon the return of the writ. At the close of the testimony the court directed the discharge of the relator from further custody, and the respondent appeals to this court from the order.

No question was raised before the court as to the regularity of any of the steps taken in procuring the warrant for the extradition of Morris Edelson, but the petition before the court alleges that:

"Morris Edelstein is presently confined in the Raymond Street Jail." "Your petitioner is informed and verily believes that the said Morris Edelstein was arrested on the 17th day of August, 1912, in the borough of Brooklyn, city of New York, and charged with the crime of 'arson' alleged to have been committed in the city of Paterson, state of New Jersey, on or about the 18th day of June, 1912. * * * Your petitioner is informed by said Edelstein, and verily believes, that the said Morris Edelstein was never in the city of Paterson, state of New Jersey, at any time during his life, and more particularly on the 18th day of June, 1912."

The petitioner further sets up that on the day of the alleged crime the relator was actually employed in the borough of Manhattan, and, while there was no formal traverse of the return, the question which appears to have engaged the attention of the court was the variance between the name of the person charged with crime under the warrant of extradition and that of the relator.

The relator testified on direct examination that he had never been known by the name of Edelson or Edelstone, and on his cross-examination he declared that he had never been in the city of Paterson, and knew no one in that city. Subsequently two witnesses, whose credibility is not questioned in the record, identified the relator as the man whom they had encountered in the immediate vicinity of the fire on the 18th day of June, 1912, in the city of Paterson. The relator's wife, Gussie Edelstein, on direct examination testified that she had lived in Brooklyn for six years, that her husband had never gone by the name of Edelson, but had always been known as Edelstein, and that she had never been in Paterson. On cross-examination she admitted that she had been in Paterson two or three weeks before the hearing, and that she had seen in a saloon in Paterson one of the colored witnesses produced by the appellant.

Abraham Internofsky on direct examination testified that he was engaged in the cooperage business, that he had known Morris Edelstein for four months, and that relator had been employed as a helper upon one of his trucks. Asked if he knew relator under the name of Edelson, not Edelstein, this witness replied: "I call him Edelson, Morris Edelson." On relator's counsel asking, "Morris what?" the witness replied, "Morris Edelstein." The court reminded the witness that he had said Edelson, and then asked him if there was any such name as Edelson in Russia. The answer was, "Edelson; yes, sir." Asked, "This is Edelson?" the witness replied, "Yes, sir." Again he was

asked, "And Edelstein? Do you recognize the difference between the two?" and he replied, "I call him Edelson." Relator's counsel then asked, "What did he call himself?" and the witness answered, "I called him Edelson." Further examined through an interpreter, the witness said:

. "To tell you the truth, I called him Morris, his first name, mostly, but I wasn't particular; called him sometimes Edelstein and Edelson."

[1, 2] It appears from the papers making a part of the return that he was known to the New Jersey authorities as Edelson, alias Edelstein, and the positive identification of the relator by two witnesses as having been at or near the scene of the fire in Paterson at the time mentioned, in connection with his denial that he was ever there, indicates plainly that the relator was the person charged with the crime of arson in New Jersey, and the mere fact that his name is misspelled in the papers before the court is not a sufficient justification for discharging the relator in a proceeding of this character. The Constitution of the United States (article 4, § 2) provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

The relator is a person. He has been charged with a crime within the state of New Jersey, and the executive of the state from whence he fled has demanded his extradition. This demand should be honored, unless it is made to clearly appear that he is not the person so charged; for we may not presume that a sister state will deny justice to the relator, and it has been laid down by high authority that mere evidence of an alibi, or evidence that the person demanded was not in the state as alleged, would not justify his discharge, where there was satisfactory evidence on the other side, as habeas corpus was not the proper proceeding to try the question of the guilt or innocence of the accused. See Hyatt v. Corkran, 188 U. S. 691, 710, 23 Sup. Ct. 456, 47 L. Ed. 657, citing New York Court of Appeals in same case, 172 N. Y. 176, 64 N. E. 825, 66 L. R. A. 774, 92 Am. St. Rep. 706.

[3] The mere fact of the misspelling of the relator's name, especially in view of the circumstances appearing in the record before us, is of no importance. The question is: Is this the person who has been charged with a crime in the state of New Jersey, and who has fled to this state? Upon this point there does not seem to be any reasonable question, and while the name is spelled differently from the name the relator now uses, it is evident from his own witness' testimony that the name found in the papers on which the relator is held is the one by which he was known by some people, and the pronunciation is not materially different in sound from the one which is now claimed to be the right one. "A name need not be correctly spelled in an indictment," say the court in Faust v. United States, 163 U. S. 452, 454, 16 Sup. Ct. 1112 (41 L. Ed. 224), "if substantially the same sound is preserved. The following are cases in which the variance between the names as alleged and as proven was at least as great

as in the present, and in which it was held that the variance was not material: Bubb and Bopp—[Myer v. Fegaly] 39 Pa. 429 [80 Am. Dec. 534]; Heckman and Hackman—[Bergman's Appeal] 88 Pa. 120; Hutson and Hudson—[Cato v. Hutson] 7 Mo. 147; Shaffer and Shafer—[Rowe v. Palmer] 29 Kan. 337; Woolley and Wolley —[Power v. Woolley] 21 Ark. 462; Penryn and Pennyrine—[Elliott v. Knott] 14 Md. 121 [74 Am. Dec. 519]."

If the above variations were not material on indictment, it seems to us clear that they ought not to be fatal to a warrant of extradition or interstate rendition, and as this is the only ground on which any serious question was raised outside of the alleged alibi, we are of the opinion that the court erred in holding that the relator was improperly in custody.

The order appealed from should be reversed, the writ of habeas corpus quashed, and the relator remanded to the appellant, to be by him turned over to the agent of the demanding state designated to receive him.  All concur.