# RYAN v. ROGERS, SHERIFF.
## (No. 752.)

Extradition—Duty of Governor Receiving Requisition—Extradition Warant—Presumption as to Sufficiency of Proof to Authorize Its Issuance—Habeas Corpus—Proper Proceeding to Question Lawfulness of Arrest Upon Extradition Warrant—Scope of Hearing—Sufficiency of Charge of Crime—Alibi—For What Purpose Defense of Alibi May Be Considered—Effect of Conflicting Evidence—Proof Necessary to Authorize Discharge—Sufficiency of Evidence.

1. A person charged with crime against the laws of a state who, after committing the crime, flees from justice—that is; leaves the state—in whatever way and for whatever reason, and is found in another state, may, under the authority of the constitution and laws of the United States, be brought back to the state in which he stands charged with the crime, to be there dealt with according to law.

2. When the executive of the state wherein a crime was committed makes a demand upon the executive of a state where the one charged with the crime is found, as authorized by Section 5278, U. S. Rev. Stat., producing at the time a copy of the indictment, or an affidavit certified as authentic and made before a magistrate charging the demanded person with a crime against the laws of the demanding state, it becomes the duty of the executive of the state where the fugitive is found, to cause him to be arrested, surrendered, and delivered to the appointed agent of the demanding state to be taken to that state.

3. The executive of a state may decline to issue an extradition warrant, upon the demand of the executive of another state for an alleged fugitive from justice, unless it is made to appear to him by competent proof that the accused is substantially charged with crime against the laws of the demanding state, and is in fact a fugitive from the justice of that state.

4. Whether an alleged criminal for whom a requisition is issued and presented is or is not a fugitive from the justice of the demanding state may, so far as the constitution and laws of the United States are concerned, be determined by the executive upon whom the demand is made in such way as he deems satisfactory, and he is not obliged to demand proof of the fact apart from proper requisition papers from the demanding state.

5. When it is determined by the executive of a state upon whom a demand is made that the alleged criminal is such fugitive from the justice of another state, and a warrant of arrest is issued after such determination, the warrant is to be regarded as making a prima facie case in favor of the demanding state and as requiring the removal of the alleged criminal to the state in which he stands charged with crime, unless in some appropriate proceeding it is made to appear that he is not a fugitive from the justice of the demanding state.

6. A proceeding by habeas corpus in a court of competent jurisdiction is appropriate for determining whether one accused of crime in another state and arrested upon an extradition warrant is subject, under such warrant of arrest, to be taken as a fugitive from justice from the state in which he is found to the state whose laws he is charged with violating.

7. One arrested and held upon an extradition warrant as a fugitive from justice is entitled, of right, upon habeas corpus, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the constitution and laws of the United States, a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant.

8. A requisition for one Charles T. Crane, otherwise known as James Ryan, was accompanied by an indictment charging the commission of a crime in the demanding state by Charles T. Crane, and also by an affidavit referring to said Charles T. Crane as "otherwise known as James Ryan," which affidavit purported to state some of the facts of the alleged crime, that the one indicted had fled the jurisdiction of the demanding state and was under arrest in the other state as such fugitive from justice. *Held*, that the charge of crime sufficient to authorize the requisition was contained in the indictment, and it was not necessary that said affidavit should have been sworn to before a magistrate; it appearing that the affidavit was presented to the executive of the demanding state for the purpose of showing the presence in that state of the one indicted at the time of the commission of the crime, and that he had fled from the state, and also the good faith of the request for the extradition.

9. Under the statute of Illinois providing that every person who shall obtain from any other person or persons, any money or property, by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned in the penitentiary, &c., and the statute providing that it shall be a sufficient description of such offense in any indictment to charge that the accused did unlawfully and feloniously obtain from the person defrauded his money or property by means and by use of the confidence game, an indictment charging that the accused on a date named unlawfully, fraudulently and feloniously did obtain from a person named a large sum of money, goods and personal property described, the property of said person, by means and by use of the confidence game, contrary to the statute and against the peace and dignity of the people of the State of Illinois, sufficiently charged accused with said crime to justify a requisition for his arrest in another state and return as a fugitive from justice; an indictment so charging the offense being held sufficient by the decisions of the Supreme Court of Illinois.

10. Where the legality of an arrest under an extradition warrant is questioned on habeas corpus, the question of the plaintiff's guilt or innocence of the crime charged is not involved, and it is therefore unnecessary that an affidavit accompanying the extradition papers intended to establish the identity of the accused with the person charged in the indictment shall allege all the facts or elements of the crime charged, and hence it is not a ground for the discharge of the person arrested that the facts stated in such affidavit do not show the charge in the indictment to be well founded.

11. A requisition for an alleged fugitive from justice named him as "Charles T. Crane, otherwise known as James Ryan," and was accompanied by an indictment charging the commission of a crime in the demanding state by Charles T. Crane. The warrant of arrest issued by the executive of the state upon whom the demand was made also named the one to be arrested as "Charles T. Crane, otherwise known as James Ryan." *Held,* on habeas corpus, where the legality of the arrest was questioned, that it was unnecessary to decide whether the facts shown made it proper to embrace in the requisition and the warrant an alias name, for, even if the insertion of the alias name in the requisition and warrant was unauthorized, that would not affect

the regularity of the papers, and would not be material in the habeas corpus proceeding, if in fact the person arrested and seeking to be discharged was the identical person intended to be named and charged by the indictment.

12. When a person is held in custody as a fugitive from justice under an extradition warrant in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody on habeas corpus, unless it clearly and satisfactorily appears that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States; in such a case the question is not one merely of preponderance of evidence.

13. Habeas corpus is not the proper proceeding to try any question as to the guilt or innocence of a petitioner arrested and held upon an extradition warrant, or to try the question of alibi so far as it relates to his guilt or innocence; but where the same evidence that might be used to establish the defense of alibi on his trial tends also to prove that he is not a fugitive from justice it is proper to consider it in determining that question in a habeas corpus proceeding, wherein the legality of his arrest is questioned, and the fact that he is a fugitive from justice is denied.

14. The mere fact that in such a proceeding the evidence is conflicting as to the identity of the one arrested with the person charged in the indictment will not justify the discharge of the petitioner, for the extradition papers are entitled to some consideration, and it is incumbent upon the person in custody to do more than produce evidence possibly sufficient to raise a doubt as to his identity; the evidence that he is not the person charged and demanded must be clear and satisfactory.

15. On habeas corpus, where the plaintiff questioned the legality of his arrest under an extradition warrant, claiming that he was not the person named in the indictment and charged with the crime in the demanding state, *held*, upon an examination of the evidence, that it did not clearly and satisfactorily show that the plaintiff was not the person charged, or that he was not within the demanding state at the time of the commission of the alleged crime.

[Decided May 3, 1913.]                    (132 Pac. 95.)

ORIGINAL proceeding on habeas corpus.

The material facts are stated in the opinion.

*W. B. Ross* and *Ray E. Lee,* for plaintiff, contended that the identification of the plaintiff as the person indicted was not sufficient, and that the requisition papers were insufficient to justify the arrest, citing the following: State ex rel. v. Richardson, 24 N. W. 354; Ex parte Powell, 20 Fla. 806; Ex parte Hart, 63 Fed. 249; Ex parte Smith, 22 Fed. Cas. No. 12,968; Ex parte Morgan, 20 Fed. 298; 8 Am. & Eng. Ann. Cas. 1068; Pierce v. People, 81 Ill. 98; People ex rel. v. Byrnes et al., 33 Hun, 98; Barnes v. Nelson, 121 N. W. 89; Johnson v. Riley, 13 Ga. 97; State v. Bates, 102 Minn. 104, 112 N. W. 1026; 15 Fed. Cas. No. 8,162.

*D. A. Preston,* Attorney General, and *George C. Bliss* of Chicago, Illinois, Assistant State's Attorney, for defendant, contended that the identification of the plaintiff was sufficient; that the requisition papers were in proper form and sufficient to justify the arrest of the plaintiff and his return to the demanding state, citing the following: Laws of Illinois, Secs. 98, 99; Dubois v. People, 200 Ill. 157; People v. Weil et al., 244 Ill. 176; In re Keller, 36 Fed. 681; Ex parte Reggel, 114 U. S. 642; Roberts v. Riley, 116 U. S. 80; Pierce v. Texas, 155 U. S. 311; Munsey v. Clough, 196 U. S. 364; Pierce v. Creecy, 210 U. S. 387; People v. Baker, 127 N. Y. Supp. 382.

Potter, Justice.

This is an original proceeding in habeas corpus involving the arrest and imprisonment of the plaintiff, James Ryan, by the sheriff of Niobrara county in this state. Upon the presentation of the petition to one of the Justices of this court the writ was allowed and made returnable to the court. The officer's return to the writ, as well as the petition, shows that the plaintiff was arrested and is held by said sheriff by virtue of a warrant issued by the Governor of this state upon a requisition from the Governor of the State of Illinois,

commanding that one Charles T. Crane, otherwise called James Ryan, be arrested, safely kept, and delivered to the agent named by the Governor of Illinois in said requisition.

The requisition of the Governor of Illinois directed to the Governor of this state, omitting the caption, attestation and signatures, is as follows: "Whereas, it appears by the papers required by the statutes of the United States, which are hereunto annexed, and which I certify to be authentic and duly authenticated in accordance with the laws of this state, that Charles T. Crane, otherwise called James Ryan, stands charged with the crime of Confidence Game, which I certify to be a crime under the laws of this state, committed in the county of Cook in this state, and it having been represented to me that he has fled from the justice of this state and has taken refuge in the state of Wyoming; Now, Therefore, pursuant to the provisions of the Constitution and Laws of the United States in such case made and provided, I do hereby require that the said Charles T. Crane, otherwise called James Ryan, be apprehended and delivered to William Murvane, who is hereby authorized to receive and convey him to the State of Illinois, there to be dealt with according to law." Accompanying and annexed to said requisition is a certified copy of an indictment presented by the grand jurors at the April Term, 1913, of the Criminal Court of Cook County in said State of Illinois, charging that one Charles T. Crane, late of the County of Cook, on the 3rd day of March, 1913, in said county and state, unlawfully, fraudulently and feloniously did obtain from Hope L. McEldowney a large amount of money, goods and personal property (describing the same), the goods, money and personal property of Hope L. McEldowney, by means and by use of the confidence game, contrary to the statute, and against the peace and dignity of the people of the State of Illinois. A second count is contained in the indictment charging the said Charles T. Crane with the crime of grand larceny, alleging the same money and property as that described in the first count, of the value of $15,500, to have been stolen, taken

and carried away by the said Charles T. Crane on the date
and in the county aforesaid. Annexed to said requisition is
also a petition by the State's Attorney for Cook County,
Illinois, directed to the Governor of that state, stating that
Charles T. Crane, otherwise called James Ryan, stands
charged "by the accompanying certified copy of indictment
and affidavit with the crime of Confidence Game, committed
in the County of Cook and State of Illinois, on or about the
3rd day of March, 1913; that on or about the 3rd day of
March, 1913, the said Charles T. Crane, otherwise called
James Ryan, fled from the State of Illinois, and is now, as
your petitioner verily believes, in the County of Converse
and State of Wyoming, fugitive from the justice of this
state, and the grounds of such belief are as follows: Tele-
gram from A. C. Jones that Charles T. Crane is under ar-
rest by A. R. Rogers, Sheriff, Lusk, Wyoming. Therefore,
your petitioner prays that a requisition may issue upon the
Governor of the said State of Wyoming and that William
Murvane of the City of Chicago, County of Cook, and State
of Illinois, may be appointed messenger of the State of
Illinois to go after, receive and return the said fugitive to
the County of Cook, State of Illinois, for trial. Your pe-
titioner further certifies that in his opinion the ends of public
justice require that the said Charles T. Crane, otherwise
called James Ryan, be brought to this state for trial at the
public expense, and that he believes he has sufficient evi-
dence to secure his or her conviction." An affidavit appears
as a part of that petition signed and sworn to by Hope L.
McEldowney, stating that the facts set forth in the petition
are true, and that the requisition for the fugitive named
therein is not sought for the purpose of collecting a debt,
to allow any person to travel at the expense of the state, or
to answer any private end whatever, and shall not be used
for any of said objects. Said affidavit was sworn to April
18, 1913, before the Clerk of the Criminal Court of said
Cook County, Illinois, the same appearing to be duly attested
and authenticated. Also annexed to said requisition appears
an affidavit in words and figures as follows:

"STATE OF ILLINOIS,⎰
    COUNTY OF COOK,   ⎱ ss.

IN THE CRIMINAL COURT OF COOK COUNTY.

The People of the State of Illinois ⎫
              vs.                    ⎪
Charles T. Crane, otherwise called  ⎬ Confidence Game.
    James Ryan.                      ⎭

In the matter of the extradition of ⎫
    Charles T. Crane, otherwise called ⎪
    James Ryan, defendant mentioned  ⎬
    in the above entitled cause, and ⎪
    fugitive from justice.           ⎭

Affidavit of Hope L. McEldowney, prosecuting witness in aid of the petition for extradition:

Hope L. McEldowney, being first duly sworn, according to law, deposes and says that she resides at 2969 Michigan avenue, City of Chicago, County of Cook and State of Illinois, and that she is acquainted with the said Charles T. Crane, otherwise known as James Ryan, and knows of her own knowledge that the said Charles T. Crane, otherwise known as James Ryan, was personally present in the City of Chicago, county and state aforesaid, on the 3rd day of March, 1913.

Affiant further says that on or about the 3rd day of March, A. D. 1913, the said Charles T. Crane, otherwise known as James Ryan, suggested to this affiant that she ought to put her money in railroad bonds, and told this affiant that Great Northern Railroad bonds would be a good investment for her and that he would gladly aid this affiant in helping her to invest her money; that thereupon this affiant, believing in the honesty and integrity of the said Charles T. Crane, otherwise known as James Ryan, and believing in the representations made by the said Charles T. Crane, otherwise known as James Ryan, that he would invest this money for her as he stated that he would, gave to the said Charles T. Crane, otherwise known as James Ryan, the sum of $15,500. Affiant further says that the said

Charles T. Crane, otherwise known as James Ryan, having obtained the $15,500 above mentioned, immediately left the city of Chicago and fled the jurisdiction of Illinois and is now a fugitive from justice under arrest at Lusk, Wyoming, as this affiant is informed and believes from a telegram from A. C. Jones, Cheyenne, Wyoming, that the said Charles T. Crane, otherwise known as James Ryan, is under arrest at Lusk, Wyoming.

Affiant further says that the said Charles T. Crane, otherwise known as James Ryan, did not invest the said sum of money of $15,500 in any railroad bonds for her and that she did not receive any bonds at all from the said Charles T. Crane, otherwise known as James Ryan; nor has the said Charles T. Crane, otherwise known as James Ryan, returned to her the said sum of $15,500, or any part thereof.

Affiant further says that this prosecution is not brought for the purpose of collecting any debt nor to enable any one to ride free at the expense of the State, but is bona fide in every respect, and when the said Charles T. Crane, otherwise known as James Ryan, is returned to the County of Cook and jurisdiction of Illinois, this affiant will appear in the Criminal Court to testify against said defendant in the cause therein pending against him, as will more specifically appear from the attached copy of indictment, which are made a part of this affidavit.

And further affiant saith not.

(Signed)   Hope L. McEldowney.

"STATE OF ILLINOIS,⎫
  COUNTY OF COOK,   ⎬ss.
                    ⎭

Hope L. McEldowney being first duly sworn according to law, deposes and says that she has read the foregoing affidavit, by her subscribed, and knows the contents thereof, and that the same is true in substance and in fact, except as to the matters and things which are therein stated to be upon information and belief, and as to such matters she believes them to be true.

(Signed)   Hope L. McEldowney.

Subscribed and sworn to before me, this 18th day of April, A. D. 1913.        (Signed)    FRANK J. WALSH, (Seal)                        Clerk of the Criminal Court."

The warrant of the Governor of this State issued upon said requisition recites as follows: "Whereas, it appearing from the requisition of His Excellency, the Governor of the State of Illinois, bearing date April 19, 1913, and from papers thereto attached duly authenticated, that Charles T. Crane, otherwise called James Ryan, stands charged with the crime of Confidence Game committed in the County of Cook in the year 1913 in said State, and that said Charles T. Crane, otherwise called James Ryan, is a fugitive from justice and has taken refuge in this state. And, Whereas, the said Requisition requests that the said Charles T. Crane be apprehended and delivered to William Murvane, who is the duly appointed agent and authorized to receive and convey him to the State of Illinois to be dealt with according to law." Following such recitals the warrant commands any and every sheriff, in whose hands soever the writ may be placed, to arrest the said Charles T. Crane, otherwise called James Ryan, and to safely keep and deliver to said William Murvane, agent as aforesaid.

It is alleged in the petition for this writ of habeas corpus that the plaintiff is a resident of this state and has resided therein for a period of about three years last past; that he is unlawfully imprisoned and restrained of his liberty by the defendant, the sheriff of Niobrara County; that the cause or pretense of such restraint and imprisonment is the requisition and warrant above referred to; that the requisition was honored and allowed by the Governor of this state without receiving any evidence on behalf of the plaintiff to disprove any of the facts stated in the affidavit in support of the requisition pretending to identify the plaintiff with Charles T. Crane, the person named in the indictment; that said indictment does not charge the plaintiff with the commission of any crime or offense, and does not charge one Charles T. Crane with any crime or offense; that said

plaintiff is not said Charles T. Crane, has never been known by that name, and has never pretended or assumed to be Charles T. Crane; that each and every statement of fact contained in the affidavit charging the plaintiff with the commission of the pretended crime or offense is false and untrue, and that each and every statement contained in said affidavit charging that plaintiff is Charles T. Crane, or that he is a fugitive from justice is false and untrue; that the plaintiff is not a fugitive from justice, and that he is not guilty of either of the pretended crimes or offenses alleged in said indictment. It is further alleged that the legality of the restraint and imprisonment of said plaintiff has been adjudged upon a proceeding for a writ of habeas corpus before the District Court of the First Judicial District sitting within and for Niobrara County; that upon such hearing it was adjudged that said plaintiff was lawfully restrained and imprisoned by said defendant; that said court refused to grant sufficient time within which the plaintiff could bring his appeal to this court, and that had he attempted to complete said appeal he would have been delivered to said William Murvane and transported to the State of Illinois before the same could have been commenced; that the plaintiff feels that he has been wronged and aggrieved by the said decision of said District Court. It is further alleged that the Governor of this State had no jurisdiction to issue the warrant because no competent evidence was before him that plaintiff was or is a fugitive from justice from the State of Illinois; or that the plaintiff and said Charles T. Crane are one and the same person.

The return or answer of the defendant to the writ of habeas corpus states that he has the plaintiff in his custody, and produces him in court, and that the cause of his detention is a certain warrant issued by the Governor of this state and a certain order of the District Court of the First Judicial District in and for Niobrara County, copies of which are attached to and made a part of the answer. The nature, recitals and command of the Governor's warrant are

above set forth. The order of the District Court appears to have been made in the habeas corpus proceeding in that court and states the finding of the court that the plaintiff is lawfully held by the defendant under and by virtue of the Governor's warrant issued upon the requisition of the Governor of Illinois, and that it is ordered and adjudged that the petition of the plaintiff be denied, that he be remanded to the custody of the defendant, and that said defendant deliver the plaintiff to William Murvane, the messenger of the Governor of Illinois, on April 30th, 1913, at two o'clock p. m. In passing it may be said that before the hour named in said order for the delivery of the plaintiff to the messenger from Illinois, the writ in this case was allowed. The plaintiff has filed a reply to said answer whereby it is denied that the answer states any cause or facts sufficient to warrant the defendant in holding the plaintiff, that the plaintiff is the person known or described in the alleged requisition, or named in the warrant issued thereon; or that he is a fugitive from justice charged with any crime or offense under the laws of the State of Illinois or under the laws or Constitution of the United States; or that any charge, indictment or affidavit such as is required by the Act of Congress under the Constitution of the United States has been filed in any court of competent jurisdiction within the State of Illinois charging the plaintiff with the commission of any crime or offense against the laws of that state. And the plaintiff alleges by his reply that he is a resident of this state and re-alleges each and every allegation and statement of fact in his petition filed herein. The pleadings are respectively verified, the answer being verifiied by the oath of the defendant and the reply by the oath of the plaintiff.

In addition to the requisition papers and the warrant upon which the plaintiff was arrested, counsel representing the sheriff and also the demanding state produced as a witness Mrs. Hope L. McEldowney to identify the plaintiff as the person demanded by the requisition and named in the indictment annexed thereto, the court having suggested in

response to an inquiry as to the necessity for additional evidence that since the name of the accused was stated in the indictment merely as Charles T. Crane, and the prisoner had denied under oath that he is or has ever pretended or assumed to be Charles T. Crane, some evidence should be produced identifying the plaintiff as the person indicted. (See Barnes v. Nelson, 23 S. D. 181, 121 N. W. 89, 20 Ann. Cas. 544.) Upon further consideration of that matter, in view of the affidavits attached to the requisition supporting the request of the State's Attorney therefor referring to the person indicted by the name stated in the indictment and also as otherwise known as James Ryan, we entertain some doubt as to whether it was necessary for the production of anything more than the warrant and requisition papers, if regular in form, to make out a prima facie case warranting the holding of the plaintiff, unless overcome by competent evidence on his behalf. But we shall leave the question undecided, deeming it immaterial to a determination of the case as finally presented.

Mrs. McEldowney not only positively identified the plaintiff as the person indicted by the name of Charles T. Crane, testifying that she appeared before the grand jury in Cook County, Illinois, at the April term this year, that her testimony resulted in the indictment aforesaid, that as such witness she testified against this plaintiff, whom she had known in Chicago as Charles T. Crane, with reference to the crime charged in the indictment, and that the plaintiff is the identical person so indicted and intended to be indicted, but she further testified in substance that she knew the plaintiff as Charles T. Crane, that she first met him in Chicago, Illinois, on January 18, 1913, and saw him in that city after that date nearly every day until March 3, 1913, that being the last day she saw him there, and that on that date he obtained from her the money mentioned in the indictment, stating that it was in the form of a draft; the fact of his so obtaining the money being brought out on cross-examination. That on that day he came to her apartments at 2507 Michi-

gan avenue in Chicago to "get this draft, this money from me." That when she first saw the plaintiff it was at his office, 204 North State Street, in Chicago, where, from his advertisements, he was conducting a business described as clairvoyancy, palmistry and investments. That after the day she first saw him at his said office she saw him there about six times, and also several times at restaurants and theatres, having been with him at those places; that she was with him at different restaurants about twenty-five times, and had also taken automobile rides with him. When asked if she saw in the court room the man to whom she referred as Charles T. Crane, as the one whom she had seen and been with as above stated, and, if so, to point him out, she pointed out the plaintiff, stating positively that she knew him to be the man. She further testified that when she saw him enter the court room at Lusk at the time of the recent hearing there she was then also positive that he was the same man Charles T. Crane, the person she knew in Chicago by that name; and that she was the same Mrs. McEldowney whose name appears in the indictment, and who swore to an affidavit before the Clerk of the Criminal Court about this matter, referring to Charles T. Crane as otherwise known as James Ryan.

The plaintiff testified as a witness in his own behalf, stating in substance that he resided at Manville, near Lusk, in Niobrara County in this state (formerly a part of Converse County) and had resided there about three years last past. That he had never lived in Chicago, was not in that city on March 3rd, 1913, and had not been there more than two days at any one time, and then only as he was passing through the city. That he had never seen Mrs. McEldowney in Chicago, or until he saw her at Lusk at the time of the habeas corpus hearing there, and that she had never seen him in Chicago. That his name was James Ryan; that he had never gone by the name of Charles T. Crane, and had never received any money, draft, or other property from Mrs. McEldowney. He testified in detail respecting where

he had been from the time he left his place of residence in this state about the 1st of October, 1912, until his return about the 20th of March, 1913, stating that he first went to Syracuse, New York, his former home, where he remained until the third day of January of the present year; that he then went to New York City where he remained until about the middle of March, when he returned to this state. That on his return he came through Chicago without stopping there, thence to Kansas City, and from that place to his home in this state. Mrs. Ryan's testimony corroborated that of the plaintiff to the effect that he went to Syracuse upon leaving his home at Manville about the 1st of October, 1912, and then went to New York City early in January, 1913. She testified that she went to New York City about January 20th and remained there with the plaintiff for one week, then returning to Syracuse, and that she also went to New York about the 20th of February and was with the plaintiff there for four or five days or nearly a week, and upon her return to Syracuse received a letter from him March 2, 1913, sent to her from New York City. That on that date she left Syracuse for Manville, arriving there the 18th day of March, and that she was accompanied by a younger brother of the plaintiff named Charles, and another young man by the name of Bartholomew. She also testified that the plaintiff had never been known as Charles T. Crane to her knowledge.

The Constitution of the United States, in Section 2 of Article IV, provides for inter-state extradition as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." And by Section 5278 of the Revised Statutes of the United States it is provided: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which

such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

Referring to these provisions it was said by the Supreme Court of the United States in McNichols v. Pease, 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121, that the following principles are to be deduced from previous decisions of that court, citing the cases:

"1. A person charged with crime against the laws of a State and who flees from justice, that is, after committing the crime, leaves the State, in whatever way or for whatever reason, and is found in another State, may, under the authority of the Constitution and laws of the United States, be brought back to the State in which he stands charged with crime, to be there dealt with according to law.

"2. When the Executive authority of the State whose laws have been thus violated makes such a demand upon the Executive of the State in which the alleged fugitive is found as is indicated by the above Section (5278) of the Revised Statutes—producing at the time of such demand a copy of the indictment, or an affidavit certified as authentic and made before a magistrate charging the person demanded

with a crime against the laws of the demanding State—it becomes, under the Constitution and laws of the United States, the duty of the Executive of the State where the fugitive is found to cause him to be arrested, surrendered and delivered to the appointed agent of the demanding State, to be taken to that State.

"3. Nevertheless, the Executive, upon whom such demand is made, not being authorized by the Constitution and laws of the United States to cause the arrest of one charged with crime in another State unless he is a fugitive from justice, may decline to issue an extradition warrant, unless it is made to appear to him, by competent proof, that the accused is substantially charged with crime against the laws of the demanding State, and is, in fact, a fugitive from the justice of that State.

"4. Whether the alleged criminal is or is not such fugitive from justice may, so far as the Constitution and laws of the United States are concerned, be determined by the Executive upon whom the demand is made in such way as he deems satisfactory, and he is not obliged to demand proof apart from proper requisition papers from the demanding State, that the accused is a fugitive from justice.

"5. If it be determined that the alleged criminal is a fugitive from justice—whether such determination be based upon the requisition and accompanying papers in proper form, or after an original, independent inquiry into the facts—and if a warrant of arrest is issued after such determination, the warrant will be regarded as making a prima facie case in favor of the demanding State and as requiring the removal of the alleged criminal to the State in which he stands charged with crime, unless in some appropriate proceeding it is made to appear that he is not a fugitive from the justice of the demanding State.

"6. A proceeding by habeas corpus in a court of competent jurisdiction is appropriate for determining whether the accused is subject, in virtue of the warrant of arrest, to be taken as a fugitive from the justice of the State in which

he is found to the State whose laws he is charged with violating.

"7.   One arrested and held as a fugitive from justice is entitled, of right, upon habeas corpus, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws of the United States, a fugitive from the justice of the demanding State, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant."

In this cause the plaintiff questions the legality of his arrest and imprisonment upon two principal grounds:   1. That the papers accompanying the requisition are insufficient to show that the plaintiff, James Ryan, is charged with having committed a crime in the State of Illinois, or that Charles T. Crane is so charged.   2. That if the requisition papers be deemed sufficient to show that Charles T. Crane is charged with having committed a crime in Illinois, the plaintiff is not Charles T. Crane, or the person so charged, and was not in the State of Illinois at or about the time when such crime is charged to have been committed.   In support of the proposition that the papers are insufficient to show a charge of crime authorizing the arrest or demand for extradition, it is contended in the first place that the affidavit of Mrs. McEldowney is the only paper accompanying the requisition which purports to charge the commission of crime by James Ryan, and that said affidavit is insufficient for the reason that it does not appear to have been made before a magistrate, and for the further reason that the facts stated therein do not show the commission of any crime. That affidavit appears to have been made before the clerk of the Criminal Court of Cook County, Illinois, and is entitled in that court in the case of the People of the State of Illinois vs. Charles T. Crane, otherwise called James Ryan; and in the matter of the extradition of Charles T. Crane, otherwise called James Ryan, "defendant mentioned in the above entitled cause, and fugitive from justice."   It does not

appear that any warrant from said court was issued or ordered to be issued upon that affidavit. If that was the only paper to show a charge of crime as authority for the extradition of the person named therein, we should doubt its compliance with that provision of the statute permitting the charge of crime to be shown by affidavit made before a magistrate. But it is apparent, we think, that this affidavit was not filed for the purpose, independently of any other proceeding, of charging the commission of a crime by Charles T. Crane, otherwise called James Ryan, but to be presented to the Governor of Illinois together with a copy of the indictment against Charles T. Crane to show that the accused was personally present in the State of Illinois at the time of the commission of the crime, and had fled from that state, and also the good faith of the request for the extradition of the accused, which we believe customary in such cases. The charge of crime is contained in the indictment, a copy of which duly authenticated accompanies the requisition, and its allegations must control in determining the legal question whether it is shown that the person named therein is charged with the commission of a crime. By the statutes of Illinois, which were introduced in evidence, and the decisions of its Supreme Court, a crime appears to be sufficiently charged by the indictment. It is provided by statute in that state as follows: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years," and in the succeeding section it is provided as follows: "In every indictment under the preceding section, it shall be deemed and held a sufficient description of the offense, to charge that the accused did, on, etc., unlawfully and feloniously obtain, or attempt to obtain (as the case may be), from A B (here insert the name of the person defrauded or attempted to be defrauded), his money (or

property, in case it be not money), by means and by use of
the confidence game." In referring to the crime so charged
and the necessity of setting forth in an indictment the ele-
ments constituting the offense it is held by the Supreme
Court of Illinois that an indictment charging the offense in
the manner in which it is charged in this indictment is suf-
ficient (Morton v. People, 47 Ill. 468; Maxwell v. People,
158 Ill. 248, 41 N. E. 995.) In Morton v. People, the court
said: "The nature and character of the so-called confidence
game has become popularized in most of the cities and large
towns, and even the rural districts of this broad Union, and
is well understood, and this defendant was distinctly ap-
prized by the indictment of what he was called upon to
defend. The accusation is sufficiently identified by the name
of the victim. This name must appear in every indictment
on this statute, and appearing there, no second indictment for
the same offense could be successfully prosecuted.  *  *  *
We are of the opinion that the offense is so set forth in the
indictment that the accused can be at no loss to know what
it is with which he is charged, and can so prepare his de-
fense." And again, referring to the section defining the
crime called "confidence game," it was said in the same case:
"Now, as these devices are as various as the mind of man
is suggestive, it would be impossible for the legislature to
define them, and equally so, to specify them in an indict-
ment; therefore the legislature has declared, that an indict-
ment for this offense shall be sufficient if the allegation is
contained in it that the accused did, at a certain time and
place, unlawfully and' feloniously obtain or attempt to ob-
tain the money or property of another by means and by use
of the confidence game, leaving to be made out by the proof
the nature and kind of the devices to which resort was had."

In Maxwell v. People, *supra,* the court said that it was
difficult to give a definition of what is commonly called the
confidence game, and, after quoting from Morton v. People,
*supra,* it was further said: "The popular idea of the confi-
dence game, as understood 'in most of the cities and large

towns, and even in the rural districts' of the Union, is best expressed in the definition thereof in Webster's International Dictionary, and is as follows: 'Confidence game is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.' " In view of these decisions based upon the statutory provisions aforesaid, it is clear that the indictment before us must be considered as charging the commission of the crime of confidence game, and sufficient, so far as a charge of crime is concerned, without regard to the second count charging the crime of larceny, to justify the requisition, and the warrant of the Governor of this State, for the arrest of the accused, if found in this State, and his surrender to the agent named in the requisition. There seems to be some contention that the facts stated in the affidavit above referred to show that the charge in the indictment is not well founded. But the question of the guilt or innocence of the accused is not involved in this proceeding, and it was not necessary to state in the affidavit all the facts or elements of the crime charged, nor does it appear that it was intended to do so.

Since the indictment does not mention any *alias* of the person charged it may be doubtful whether the words "otherwise known as James Ryan," following the name Charles T. Crane, were properly inserted in the requisition and governor's warrant. We expressed some doubt about that matter when orally announcing our conclusion to remand the plaintiff, stating, however, that we deemed it to be immaterial for the reason that the name stated in the indictment is also in the requisition and warrant, so that if the insertion therein of the *alias* was unauthorized it would not constitute a fatal objection to the arrest and detention of the plaintiff, though his true name may be James Ryan, if he is the identical person indicted and intended to be indicted by the name of Charles T. Crane and demanded by the requisition, since he may have been known in the State of Illinois by that name, or, if he committed the crime charged may have assumed that name. At the time of writing this opinion

the doubt concerning the authority to insert in the requisition and in the warrant the words above mentioned as further describing the person therein named has been somewhat removed. The petition of the State's Attorney stating that the party charged by the indictment is a fugitive from justice, and the supporting affidavit each refers to the party indicted as "otherwise known as James Ryan," and in such a manner, we think, as to inform the Governor of the State of Illinois that Charles T. Crane, the person who stands charged with the crime by the indictment, is in fact otherwise known as James Ryan, and we are now inclined to think that this might be sufficient to authorize such a description in the requisition of the accused and alleged fugitive from justice, and likewise in the governor's warrant, though we do not decide that question.

Where a requisition by the Governor of Pennsylvania had demanded one Robert J. Williams, charged with having committed the crime of forgery in that state, and the Governor of Georgia, to whom the requisition was directed, had by his warrant ordered the arrest of Robert J. Williams (alias Spencer Riley) it was held in Johnston v. Riley, 13 Ga. 97, 136, that the insertion of the alias name in the warrant of arrest was unauthorized. That was an action for false imprisonment, and, answering the argument made upon the proposition that there was no authority to issue a warrant for Spencer Riley upon the requisition for Robert J. Williams, the court said: "As a distinct legal proposition, it is undoubtedly true, that the Governor of Georgia had no such right; but the error was committed by him in doing that which he believed to be a faithful discharge of his constitutional duty towards the State of Pennsylvania. The insertion of the alias was not necessary in our judgment, to have authorized the arrest of Riley, if, indeed, he was the same individual who committed the forgery, under the assumed name of Robert J. Williams. Had Riley been arrested under the warrant issued for the arrest of Williams, without the insertion of the alias, and been carried to the

State of Pennsylvania, and put upon his trial in the court in which the indictment was found, as the defendant named therein, and had pleaded in abatement that his name was not Robert J. Williams, the person named in the indictment, but that his name was Spencer Riley, a different person, it would have been competent for the prosecutor to have replied, that he was the identical person who committed the crime, and that he was as well known by the name of Robert J. Williams as that of Spencer Riley; or that, at the time of committing the crime, he represented his name to be Robert J. Williams, and upon proof of the facts contained in such replication he might have been properly convicted. (Citing authorities.) But the party making the arrest would have taken the responsibility of proving the identity of the person so arrested." And further on in the opinion it was said: "Had the defendant plead the warrant under which the arrest was made, and the other proceedings under which it was founded in justification, and had further alleged in his plea that the defendant was as well known by the name of Robert J. Williams, as Spencer Riley; that at the time the offense was committed in Philadelphia, the plaintiff represented his name to be Robert J. Williams, and was in fact the same identical person who assumed the latter name at the time, we should have held such plea upon principle to have been good. Upon such plea having been filed, it would have been competent for the defendant to have requested the court, to have instructed the jury, at the trial, that if they believed, from the evidence, that the plaintiff was the same person, who, under the assumed name of Robert J. Williams, committed the forgery in Philadelphia, they should find a verdict for the defendant."

In ex parte Glucksman, (C. C.) 189 Fed. 1016, which was a proceeding in habeas corpus and certiorari pending application for extradition, it appeared by the extradition papers that in the summer of 1910 a forgery was uttered by a leather merchant residing at Lodz in Russia, named Leiba Gliksman; that Leibel Pincusov Glucksman, a leather mer-

chant formerly living at Lodz, Russia, arrived at the Port of New York early in August, 1910. That the person so arriving in New York, except in the matter of age, answered the description sent from Russia of the person who forged the instruments; that a photograph attached to the papers sent from Russia was a photograph of the prisoner. The name of the prisoner given in the habeas corpus proceeding seems to have been Leibel Pincusov Glucksman. The court after remarking that it attached very little importance to the fact that the name of the prisoner was spelled differently in the various papers, said: "In the Russian papers it is spelled Leiba Glicksman and in the papers written in the English language it is frequently spelled Lewek Glucksman, the difference, it is thought, being largely attributable to whether Polish, Russian or Yiddish is used. In any event, it is immaterial; if the prisoner be the person who committed the forgery he may be held under an alias, without any knowledge of his true name."

In Tiberg v. Warren, 192 Fed. 458, 112 C. C. A. 596, it appeared that the complaint attached to the requisition charged the commission of crïme by Johan Tiberg. It does not appear from the opinion whether an alias name was contained in the requisition. But a habeas corpus proceeding to determine the legality of the arrest upon a warrant issued upon the requisition was brought by "Johan Tiberg, also known as Edwin Johansen." There seems to have been no question made in the case with reference to the name of the person charged.

There is this difference between the facts in this case and those considered in Johnston v. Riley, *supra*: the requisition, as well as the governor's warrant, describes the person demanded by the name stated in the indictment and also by the alias, that is to say, by the words "otherwise known as James Ryan." And he is described in the same manner in the petition of the State's Attorney for the extradition, and in the affidavit appearing to have been presented with it, each referring to the indictment and the party thereby

charged with crime. But, as above indicated, it is unnecessary here to decide whether such facts would make it proper to embrace in the requisition and the warrant issued thereon an alias name or other words more particularly describing the person charged and intended to be charged with crime by the indictment and alleged to be a fugitive from justice. The requisition and warrant each names Charles T. Crane, and even if the insertion of the alias name in the requisition and warrant should be held to be unauthorized, that would not affect the regularity of those papers, and is not material in this proceeding, if in fact the person arrested, the plaintiff here, is the identical person intended to be named and charged by the indictment. The witness, Mrs. McEldowney, positively identified him as the one against whom she testified before the grand jury and the one named in the indictment, and testified that, known by the name stated in the indictment, he was personally present in the City of Chicago in the State of Illinois, at the time the crime charged is alleged to have been committed. With this testimony, if not without it, the showing was sufficient prima facie to justify the arrest and detention of the plaintiff for the purpose of delivering him into the custody of the duly appointed agent of the State of Illinois. (In re Leary, 10 Ben. 197, 15 Fed. Cas. 106 (No. 8162) ; Barnes v. Nelson, *supra*; McNichols v. Pease, *supra.*).

To overcome this the plaintiff and his wife testified as above set forth, the testimony of the plaintiff directly contradicting that of Mrs. McEldowney, so far as it related to his presence in the State of Illinois and being known there by the name of Charles T. Crane. The testimony of Mrs. Ryan cannot be considered as tending much to reduce the effect of this conflict, or to dispute the testimony of Mrs. McEldowney, for it is not impossible that the plaintiff may have been in New York City when his wife was there in the latter part of January for about a week, and four or five days the latter part of February, and also in Chicago on January 18, and the next day, and March 3, and at the

several other times when, according to the testimony of Mrs. McEldowney, she saw him there. We are not required to determine the mere preponderance in this evidence and discharge or remand accordingly, for in a proceeding of this character, where the prisoner is held under an extradition warrant, a different rule of decision prevails.

The latest expression of the Supreme Court of the United States relative to the evidence necessary to overcome a prima facie case made by the extradition papers, when in proper form, is found in McNichols v. Pease, *supra,* where it is said: "When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States." Following the statement thus quoted it is further said, "that a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the states, and that 'while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another State.'"

In a previous decision of that court (Munsey v. Clough, 196 U. S. 364, 25 Sup. Ct. 282, 49 L. Ed. 515) it was said: "When it is conceded, or when it is conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding state, then the court will discharge the defendant. But the court will not discharge a defendant arrested under a governor's

warrant where there is merely contradictory evidence on
the subject of presence in or absence from the State, as
habeas corpus is not the proper proceeding to try the ques-
tion of alibi, or any question as to the guilt or innocence of
the accused." In that case no evidence was given other than
the papers before the governor and it was not, therefore, a
case involving conflicting evidence concerning the presence
of the accused in the demanding state. For that reason the
statement quoted was referred to in People ex rel. Genna v.
McLaughlin, 145 App. Div. (N. Y.) 513, 130 N. Y. Supp.
458, as dictum and therefore not controlling, and the rule
announced in McNichols v. Pease, *supra,* above quoted, was
referred to as the reasonable as well as the controlling rule
where the so-called question of alibi arises in a habeas
corpus proceeding instituted by one arrested upon an extra-
dition warrant. The New York case cited was heard upon
appeal from an order of the court at special term refusing
to discharge the petitioner on the ground that although it
had been completely and satisfactorily established by the evi-
dence that the person was not in the demanding state at the
time of the commission of the crime charged in the indict-
ment, there was a conflict of testimony upon the point, and
therefore it was not within the power of the court to de-
termine that the prisoner was not in the demanding state
when the crime was committed; the court declaring that it
felt bound to ignore the complete and satisfactory proof of
an alibi because a matter of defense at the trial and not
proper to be used for the purpose of defeating extradition.
The Appellate Court considered that proposition at some
length and held that if the so-called alibi be of such nature
as to establish the absence of the prisoner from the demand-
ing state when the crime was committed, it must be consid-
ered on the question of the jurisdictional fact, not whether
the prisoner be guilty or innocent, but whether he is in fact
a fugitive from justice, and said: "Any expression of opin-
ion to the contrary has no longer any basis of authority
either in the Federal courts or in the courts of this State,"

basing that statement principally upon the case of McNichols
v. Pease, *supra.* Referring to the opinion of the court at
special term that the proof of an alibi could not be consid-
ered, and the reason given for it, the Appellate Court said:
"It seems to us that this reasoning is clearly unsound. An
alibi in its general features consists of proof that the de-
fendant was not at the scene of the crime at the time of its
commission. Proof that the prisoner was not in the demand-
ing State at the time of the commission of the crime is
necessairly proof that he was not at the scene of the crime.
But the question involved in extradition proceedings is not
whether the defendant was at the scene of the crime at the
time of its commission, but whether he was anywhere within
the demanding State when the crime was committed. This
latter question had nothing to do with guilt or innocence, but
it has all to do with the question whether the prisoner has
fled from the demanding State and is, therefore, a fugitive
from justice." The order dismissing the writ of habeas
corpus was reversed and the case remanded for a determi-
nation of the question whether the prisoner be actually a
fugitive from justice either on the proofs already taken or
upon such further proofs as either party might see fit to
offer, the specific ground of such reversal being that when
the court declared that it was satisfied that the prisoner had
not been in the demanding State at the time of the commis-
sion of the crime, it became its duty to discharge him.

In a later New York case decided by the same court,
where there was conflicting testimony upon the question, in-
volving the identity of the prisoner with the person charged
with crime in the demanding State, an order discharging the
prisoner on habeas corpus was reversed, upon the ground
that the proof offered to overcome the presumption arising
from the official documents was not sufficient to clearly and
satisfactorily show that the one in custody was not a fugitive
from justice. In the opinion it was said to be a rule laid
down by high authority that "mere evidence of an alibi, or
evidence that the person demanded was not in the state as

alleged, would not justify his discharge, where there was satisfactory evidence on the other side, as habeas corpus was not the proper proceeding to try the question of the guilt or innocence of the accused." (People ex rel. Edelstein v. Warden of City Prison, 154 App. Div. 261, 138 N. Y. Supp. 1095.) In that case the extradition warrant directed the arrest and delivery of Morris Edelson to the agent of the demanding State. The petitioner, Morris Edelstein, testified that he had never been known by the name of Edelson, and that he had never been in the city in the demanding State where it was alleged the crime had been committed. His wife also testified that he had never gone by the name of Edelson. Two witnesses, however, positively identified the petitioner as having been at or near the scene of the crime at the time mentioned. The court said that it appeared from the papers that the petitioner was known to the authorities of the demanding state as Edelson, alias Edelstein, and the positive identification by two witnesses as having been at or near the scene of the crime at the time mentioned, in connection with his denial that he was ever there, indicates plainly that the relator was the person charged with the crime, "and the mere fact that his name is misspelled in the papers before the court is not a sufficient justification for discharging the relator in a proceeding of this character." And again the court say: "The question is: Is this the person who has been charged with a crime in the State of New Jersey, and who has fled to this state?"

It is true that habeas corpus is not the proper proceeding to try any question as to the guilt or innocence of a petitioner arrested and held upon an extradition warrant, or to try the question of alibi so far as it relates to his guilt or innocence. But where the same evidence that might be used to establish the defense of alibi on his trial tends also to prove that he is not a fugitive from justice, that is to say, that he was not in the demanding State when the alleged crime was committed, it is proper, we think, to consider it in determining that question in a habeas corpus proceeding, wherein the

legality of his arrest is questioned and it is denied that he is a fugitive from justice.  In the case of McNichols v. Pease, *supra,* the evidence offered upon the question was considered and held to be insufficient to overcome the prima facie case made by the official documents.  The mere fact that the evidence is conflicting will not justify the discharge of the petitioner, for the extradition papers are entitled to some consideration, and it is incumbent upon the person in custody to do more than produce evidence possibly sufficient to raise a doubt as to his identity.  The evidence that he is not the person charged or demanded must be clear and satisfactory, and in this case we are unable to say that a clear and satisfactory showing has been made that the plaintiff is not a fugitive from justice.  Aside from the improbability that the witness upon whose testimony before the grand jury this indictment was found and presented could be mistaken in her identification of this plaintiff as the person so indicted, considering the number of times that she saw him and was in his company so recently as the period from January 18 to March 3 of the present year, certain facts were brought out upon the cross-examination of the plaintiff and his wife which would cause us to seriously hesitate in declaring that even the preponderance of the evidence is with the plaintiff, much less that it clearly or satisfactorily establishes the fact that he was not in the demanding state, is not Charles T. Crane, and not the person charged with crime by this indictment.  Mrs. McEldowney testified that she saw in the plaintiff's office in Chicago a man whom the plaintiff represented to be his brother, and who resembled him.  Mrs. Ryan testified that when she returned from Syracuse to Manville she went through Chicago and Kansas City, and was accompanied (but from what point she does not state) by her brother-in-law, Charles—the plaintiff's brother, and a friend of his named Oscar Bartholomew.  The plaintiff testified that his brother was a young man twenty-four years of age. Either the plaintiff or his wife testified on cross-examination that both these young men who had accompanied Mrs. Ryan

to Manville when she returned in March, left that place after the plaintiff's arrest, and no further explanation is given of their departure except that plaintiff testified that his brother went to New York. On cross-examination of the plaintiff he was asked about a man who had been sent here in his behalf, as he testified, and who was previously unknown to him. We quote from his testimony: "Q. How long have you known him? A. Since the—— I have only known him since this trouble came up. Q. Where did you first meet him? A. At Lusk, Wyoming. Q. You didn't know him before that? A. No, sir. Q. Had you heard of him before that? A. No, sir. Q. You didn't know Mr. Moses until after he came up here after your arrest? A. Never saw him; no, sir. Q. How did he happen to come up here? A. He was sent here in my behalf. Q. He was sent here in your behalf from where? A. I don't know, sir. Q. Don't know where he was sent from? A. No, sir. Q. Know where he is from, don't you? A. Kansas City, he came from." The fact of the departure after his arrest of the plaintiff's brother and his friend without any explanation or attempted explanation thereof, when the plaintiff was intending to question the legality of his arrest and deny his identity with that of the person charged with crime in Illinois, and the plaintiff's failure to explain more definitely the circumstances connected with sending here after his arrest a man entirely unknown to him, are facts tending to create an unfavorable impression. That a stranger might be sent to assist him, after his arrest, by someone interested in his welfare, would not ordinarily be a matter to excite doubt or suspicion. But if there was nothing about the facts to conceal, it would seem that they might have been fully explained. We have also considered the fact that upon a similar hearing in the District Court, the learned judge refused to discharge the plaintiff.

The only question in the case upon which there can be any doubt, in our opinion, is that of identity. We cannot say upon the evidence that the plaintiff has clearly and satisfac-

torily established the fact that he is not the person indicted by the name of Charles T. Crane, and is therefore not a fugitive from justice. The necessary conclusion, therefore, is that the court must refuse to discharge the plaintiff, and it is ordered that he be remanded to the custody of the sheriff to be dealt with according to law and the directions contained in the governor's warrant.

BEARD, J., concurs.

SCOTT, C. J., did not sit.