THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* Mc-NICHOLS *v.* PEASE, SHERIFF OF COOK COUNTY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 19. Argued October 16, 17, 1907.—Decided November 18, 1907.

*Habeas corpus* is an appropriate proceeding for determining whether one held under an extradition warrant is a fugitive from justice; and he should be discharged if he shows by competent evidence, overcoming the presumption of a properly issued warrant, that he is not a fugitive from the demanding State.

A faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the States; and provisions of the Constitution should not be so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State. *Appleyard v. Massachusetts,* 203 U. S. 222.

A person, held in custody as a fugitive from justice under an extradition warrant in proper form which shows upon its face all that is required by law to be shown as a prerequisite to its being issued, should not be discharged unless it clearly and satisfactorily appears that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States.

Where the requisition is based on an indictment for a crime committed on a certain day, without specifying any hour, the accused does not overcome the *prima facie* case by proof that he was not at the place of the crime for a part of that day, the record not disclosing the hour of the crime, and it appearing that the accused might have been at the place named during a part of the day.

On writ of error to review a final judgment in *habeas corpus* proceedings

this court must determine by the record whether the state court erred and its decision cannot be controlled or affected by an apparent admission of defendant in error that certain affidavits annexed to the petition were used without objection as evidence.

This court takes judicial knowledge of facts known to every one as to the distance between two neighboring cities and the time necessary to travel from one to the other.

THE facts are stated in the opinion.

*Mr. John F. Geeting* for plaintiff in error:

The term "fugitive from justice," as used in § 5278, Rev. Stat., does not apply to one who constructively commits a crime in another State, but only to one physically present within a State at the time of the commission of a crime and subsequently fleeing therefrom. *Hyatt* v. *Corkran*, 188 U. S. 691; *In re Tod*, 12 S. D. 386; *Ex parte Smith*, 3 McLean, 121.

The fact that the person demanded is a fugitive from justice is a jurisdictional prerequisite to an extradition warrant. The governor upon whom the demand is made has no authority to issue his extradition warrant, unless competent proof has been made to him that the person demanded was within the jurisdiction of the demanding State at the time of the commission of the crime in question and subsequently fled therefrom. *Ex parte Reggel*, 114 U. S. 642, 651; *Roberts* v. *Reilly*, 116 U. S. 80; *Hyatt* v. *Corkran, supra; In re Jackson*, 2 Flippin, 182.

A warrant for the extradition of a person cannot be lawfully issued, unless the accused has been indicted in a court of competent jurisdiction in the demanding State, or charged by affidavit before a magistrate in such State. § 5278, Rev. Stat.

While each State has a right to create its own code of criminal procedure, the practice of the demanding State must come within the requirements of § 5278. The filing of an information, although consistent with the practice of the demanding State, is not a basis for extradition proceedings; the accused is not indicted, neither is he charged by affidavit before a magistrate. *Ex parte Hart*, 63 Fed. Rep. 249. In Wisconsin, where a

justice of the peace sits as an examining magistrate, to hold to bail or to commit for trial, an affidavit is not necessary. The warrant issues upon oral testimony taken by the justice. § 4776, Wis. Rev. Stat.; *State* v. *Davies*, 62 Wisconsin, 305.

A written statement under oath made in the positive form, if made under circumstances, or as to matters which indicate that it was made upon information and belief, will be so considered. *M. & T. Bank* v. *Loucheims*, 8 N. Y. Supp. 520; *Tim* v. *Smith*, 93 N. Y. 91; *Hart* v. *Grant*, 8 S. D. 248; *S. C.*, 66 N. W. Rep. 622; *Finely et al.* v. *De Castroverde*, 22 N. Y. Supp. 716; *Crowns* v. *Vail*, 51 Hun, 204, 206; *Bank of Pittsburg* v. *Murphy*, 18 N. Y. Supp. 575; *Van Egan* v. *Herold*, 19 N. Y. Supp. 456; *Talbert* v. *Strom*, 21 N. Y. Supp. 719. See also *Griel* v. *Backius*, 114 Pa. St. 187, 190; *Davis* v. *Mouat Lumber Co.*, 2 Colo. App. 381, 387; *Shattuck* v. *Myers*, 13 Indiana, 46, 48, 49; *People* v. *Spaulding*, 2 Paige, 336.

It is not to be presumed that the alleged larceny was committed in the presence of the chief of police and the culprit allowed to escape. A criminal complaint which does not set out facts sufficient to constitute a crime is void, and does not confer jurisdiction upon the magistrate taking it. *Moore* v. *Watts*, Breese, 18, B. B. 42; *Housh* v. *People*, 75 Illinois, 487; *Sarah Way's Case*, 41 Michigan, 299; *United States* v. *Collins*, 79 Fed. Rep. 65; *The Shattuck Case, supra; Warenzak's Case* (note, 11 Am. Crim. Rep. 376); *Armstrong* v. *Van de Venter* (extradition case), 21 Washington, 682; *S. C.*, 12 Am. Crim. Rep. 327.

All of the elements of the crime must be stated. *State* v. *Murray*, 41 Iowa, 580; *Cranor* v. *State*, 39 Indiana, 64; *Slusser* v. *State*, 71 Indiana, 280; *Barfield* v. *State*, 39 Tex. Crim. Rep. 342; *S. C.*, 11 Am. Crim. Rep. 384; *State* v. *Cruikshank*, 71 Vermont, 94; *S. C.*, 11 Am. Crim. Rep. 385; *State* v. *Fiske*, 20 R. I. 416 (and see note, 11 Am. Crim. Rep. 375). A criminal complaint, being a statement of facts, should be at least as specific as an indictment. *Lawrence* v. *Brady* (extradition case), 56 N. Y. 182; *Vandever* v. *State*, 1 Marvel, 209.

The words "complaint" and "affidavit" are not synony-

mous; and accordingly, the word "affidavit," instead of "complaint," should be used in extradition proceedings. *State* v. *Richardson,* 34 Minnesota, 115.

In the following extradition cases the affidavit or complaint was held insufficient. *State* v. *Smith,* 21 Nebraska, 552; *Ex parte Spears,* 88 California, 640; *Ex parte McCabe,* 46 Fed. Rep. 363; *In re Heilbonn,* 1 Parker Cr. R. 429; *Ex parte Rowland,* 35 Tex. Crim. Rep. 108; *In re Coleman,* 15 Blatchf. 406.

*Mr. E. C. Lindley, Mr. John J. Healy* and *Mr. F. L. Barnett,* for defendant in error, submitted:

A fugitive from justice is a person charged with a crime in the courts of one State and being there wanted to answer for said offense is found in another State. Church on Hab. Cor., §§ 478, 480; *Roberts* v. *Reily,* 116 U. S. 80; *Ex parte Reggel,* 114 U. S. 642.

Wherever the validity of a governor's warrant is made the subject of judicial inquiry, the recitals in said warrant are to be taken *prima facie* as true. *Ex parte Stanley,* 25 Tex. Civ. App. 372; Church on Hab. Cor., 626, § 486; *Leary's Case,* 10 Ben. 197; *Hyatt* v. *Corkran,* 188 U. S. 709, 715; *Munsey* v. *Clough,* 196 U. S. 372.

The technical sufficiency of the indictment or complaint charging a crime against a defendant, will not be considered on writ of *habeas corpus* in extradition procedure—that is a question for the courts of the demanding State. *Davis' Case,* 122 Massachusetts, 324; *Brown's Case,* 112 Massachusetts, 409; *Ex parte Sheldon,* 34 Ohio St. 319; *State* v. *Schleman,* 4 Harr. (Del.) 577; *Ex parte Vorhees,* 32 N. J. L. 141; *Pea* v. *Brady,* 56 N. Y. 182; *Re Greenough,* 31 Vermont, 279; *Re Manchester,* 5 California, 237; *In re Leland,* 7 Abb. Pr. N. S. 64; *Re Briscoe,* 51 How. Pr. 422; *In re Clark,* 9 Wendell, 212. Technical defect of indictment apparent upon its face will not make void governor's warrant. Church on Hab. Cor., 316, § 246.

Evidence of an *alibi* cannot defeat extradition warrant. It is not conclusive evidence. *Hyatt* v. *Corkran,* 188 U. S. 711.

The issue of a warrant of extradition is wholly a matter of executive discretion, which discretion is not subject to review by the courts. Only questions of law and fact arising upon the face of the record are subjects of judicial inquiry. 55 L. R. A. 325; 7 Colorado, 384; 21 Iowa, 467; 116 U. S. 80; *In re Leary*, Fed. Cas. No. 8,162; 2 Spellman Ex. Rem., § 1291.

Evidentiary facts need not be set out in the affidavit. It is sufficient to make the charge explicit and certain. Hurd on Habeas Corpus (2d Ed.), 611.

MR. JUSTICE HARLAN delivered the opinion of the court.

This writ of error brings up for review a final judgment of the Supreme Court of Illinois in a case of *habeas corpus* arising under that clause of the Constitution providing that "a person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime;" also, under section 5278 of the Revised Statutes, which provides, among other things, that "whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or Chief Magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

It appears from the record that the Governor of Wisconsin

made his requisition upon the Governor of Illinois, stating that John McNichols (the present plaintiff in error) was charged by affidavit with the crime of larceny from the person of one Thomas Hansen—a crime under the laws of Wisconsin—committed in the county of Kenosha, Wisconsin, and that he had fled from the justice of that State and taken refuge in Illinois, and requiring that McNichols be apprehended and delivered to the appointed agent of Wisconsin, who was authorized to receive and convey the accused to Wisconsin, there to be dealt with according to law. Accompanying the requisition were duly certified copies of three documents: 1. An official application to the Governor of Wisconsin by the District Attorney for Kenosha County for a requisition upon the Governor of Illinois for McNichols as a fugitive from the justice of Wisconsin, it being stated in such application that McNichols was there charged by affidavit before a Justice of the Peace with the crime of larceny from the person committed in that county on the thirtieth day of September, 1905. 2. A verified complaint or affidavit before a Wisconsin Justice of the Peace, alleging that McNichols did, on the thirtieth day of September, A. D. 1905, at the city of Kenosha, feloniously steal, take and carry away from the person of Thomas Hansen, against his will, two hundred dollars, lawful money of the United States, etc. 3. A warrant of arrest issued by such Justice of the Peace, based on the above affidavit, for the apprehension of McNichols.

The Governor of Illinois, in conformity with the demand of the Governor of Wisconsin, issued his warrant for the arrest and delivery of McNichols to the agent designated by the Governor of the latter State. That warrant recited—and its recitals are important—: "The Executive authority of the State of Wisconsin demands of me the apprehension and delivery of John McNichols, represented to be a fugitive from justice and has moreover, produced and laid before me the copy of a complaint and affidavit made by and before a properly empowered officer in and of the said State in accordance with the laws thereof charging John McNichols, the person so de-

manded, with having committed against the laws of the said State of Wisconsin the crime of larceny from the person which appears by the said copy of a complaint and affidavit certified as authentic by the Governor of the said State now on file in the office of the Secretary of State of Illinois, and being satisfied that said John McNichols is a fugitive from justice and has fled from the State of Wisconsin," etc.

Having been arrested under the authority of that warrant, and being in the custody of the sheriff of Cook County, Illinois, McNichols presented his petition to the Supreme Court of that State—whose jurisdiction in the premises is not disputed—praying to be discharged from custody. That petition states that prior to the issuing of the above extradition warrant he was arrested upon a warrant issued by a Justice of the Peace in Chicago, based upon the supposed criminal offense, and that he presented his petition to the Criminal Court of Cook County for a writ of *habeas corpus,* setting forth that he was not a fugitive from justice; that pending that proceeding the above extradition warrant was issued and brought to the attention of the Criminal Court, and thereupon that court, because of the gravity of the case, suspended proceedings in order to give the accused an opportunity to apply to the Supreme Court of Illinois for a writ of *habeas corpus.*

The present petition for *habeas corpus* presented to the Supreme Court of Illinois contained this paragraph: " Your petitioner further shows that he has heard Thomas Hansen testify in a certain *habeas corpus* proceeding heretofore pending regarding this same matter [no doubt the above proceeding in the Criminal Court of Cook County], the said Thomas Hansen stating in his testimony that he was the same person mentioned in said complaint, and the said Thomas Hansen then and there testifying that the said supposed crime occurred on September 30, 1905, at the hour of *two* P. M., about a block and a half from the Northwestern depot in Kenosha, Wisconsin; and your petitioner states that he was not in the State of Wisconsin on September 30, 1905, and did not commit the said offense, and

in further proof thereof your petitioner herewith presents and attaches to this petition the affidavits of John F. Graff, William Oakley, Simon F. Bower, John A. Dennison, and Hugh Campbell, the same being marked respectively Exhibits C, D, E, F, and G." In one of the affidavits here referred to the affiant stated "that upon the thirtieth day of September, A. D. 1905, the said John McNichols to this affiant's personal knowledge was in the city of Chicago at about the hour of *one* o'clock P. M. and that this affiant remained in the company of the said McNichols until 2:15 P. M. and again. met the said McNichols about three o'clock P. M. said day; this affiant further says that it would have been impossible for the said McNichols to have been in the city of Kenosha, State of Wisconsin, on the said thirtieth day of September, A. D. 1905." In the remaining five affidavits the respective affiants, using precisely the same words, stated "that upon the thirtieth day of September, A. D. 1905, said John McNichols to this affiant's personal knowledge was in the city of Chicago, the whole of the *afternoon* of the said day, this affiant and the said John McNichols *during the said afternoon* being in attendance at a baseball game in the said city of Chicago, between the Chicago and Boston teams, which said game was played at the West Side Ball Park."

The record shows that the case was heard in the Supreme Court of Illinois upon "the allegations and proofs" of the parties, and it was adjudged that the custody of the sheriff who held the accused should not be disturbed. But no bill of exceptions was taken embodying any evidence before the Supreme Court of Illinois. So that we do not know what were the "proofs" adduced by the parties. The sheriff stood upon his answer to the petition for the writ of *habeas corpus*. That answer, it will be recalled, embodied the extradition warrant issued by the Governor of Illinois.

Did the Supreme Court of Illinois err, when adjudging, as in effect it did, that the accused did not appear to be held in custody in violation of the Constitution and laws of the United States?

Some of the questions discussed at the bar have been concluded by decisions in former cases involving the meaning and scope of the above constitutional and statutory provisions. We will not extend this opinion by giving a full analysis of those cases. It is sufficient to say that the following principles are to be deduced from *Robb* v. *Connolly*, 111 U. S. 624, 639; *Ex parte Reggel*, 114 U. S. 642, 652–653; *Roberts* v. *Reilly*, 116 U. S. 80, 95; *Hyatt* v. *Corkran*, 188 U. S. 691, 719; *Munsey* v. *Clough*, 196 U. S. 364, 372; *Pettibone* v. *Nichols*, 203 U. S. 192, and *Appleyard* v. *Massachusettss*, 203 U. S. 222.

1. A person charged with crime against the laws of a State and who flees from justice, that is, after committing the crime, leaves the State, in whatever way or for whatever reason, and is found in another State, may, under the authority of the Constitution and laws of the United States, be brought back to the State in which he stands charged with the crime, to be there dealt with according to law.

2. When the Executive authority of the State whose laws have been thus violated makes such a demand upon the Executive of the State in which the alleged fugitive is found as is indicated by the above section (5278) of the Revised Statutes— producing at the time of such demand a copy of the indictment, or an affidavit certified as authentic and made before a magistrate charging the person demanded with a crime against the laws of the demanding State—it becomes, under the Constitution and laws of the United States, the duty of the Executive of the State where the fugitive is found to cause him to be arrested, surrendered and delivered to the appointed agent of the demanding State, to be taken to that State.

3. Nevertheless, the Executive, upon whom such demand is made, not being authorized by the Constitution and laws of the United States to cause the arrest of one charged with crime in another State unless he is a fugitive from justice, may decline to issue an extradition warrant, unless it is made to appear to him, by competent proof, that the accused is substantially charged with crime against the laws of the demanding

State, and is, in fact, a fugitive from the justice of that State.

4. Whether the alleged criminal is or is not such fugitive from justice may, so far as the Constitution and laws of the United States are concerned, be determined by the Executive upon whom the demand is made in such way as he deems satisfactory, and he is not obliged to demand proof apart from proper requisition papers from the demanding State, that the accused is a fugitive from justice.

5. If it be determined that the alleged criminal is a fugitive from justice—whether such determination be based upon the requisition and accompanying papers in proper form, or after an original, independent inquiry into the facts—and if a warrant of arrest is issued after such determination, the warrant will be regarded as making a *prima facie* case in favor of the demanding State and as requiring the removal of the alleged criminal to the State in which he stands charged with crime, unless in some appropriate proceeding it is made to appear that he is not a fugitive from the justice of the demanding State.

6. A proceeding by *habeas corpus* in a court of competent jurisdiction is appropriate for determining whether the accused is subject, in virtue of the warrant of arrest, to be taken as a fugitive from the justice of the State in which he is found to the State whose laws he is charged with violating.

7. One arrested and held as a fugitive from justice is entitled, of right, upon *habeas corpus*, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws of the United States, a fugitive from the justice of the demanding State, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant.

Turning now to the record of this case we find that the accused is in custody under an extradition warrant which appears upon its face to be warranted by the Constitution and laws of the United States. But we fail to find evidence sufficient to

overcome the *prima facie* case thus made by that warrant. It is said that the plaintiff in error was not in the State of Wisconsin on the day when the alleged larceny from the person of Hansen was committed; therefore, it is contended, he could not have committed the crime charged, and thereafter become a fugitive from the justice of that State. If the authorities of Wisconsin were bound by the date named in the requisition papers, which we do not concede (1 Pomeroy's Archbold's Cr. Pr. & Pl. 363), still the record presents no such case as is contended for by the accused. It was incumbent upon him, by competent proof, to rebut the presumption arising on the face of the extradition warrant and requisition papers that he was a fugitive from justice for a crime committed in Wisconsin on September 30, 1905. As already stated, no bill of exceptions embracing the evidence was taken and we cannot, therefore, say that the proofs established the fact that the accused was not a fugitive as charged, as stated in the warrant of arrest.

It is argued, however, that the affidavits accompanying the petition for *habeas corpus* show that the accused was not in Wisconsin when the crime in question was alleged to have been committed. The record does not justify us in assuming that those affidavits were in fact offered as evidence, or were used with the consent of the State as evidence, or were treated as evidence by the Supreme Court of Illinois. It is true that the counsel for the sheriff uses some language in his brief which is construed as admitting that the affidavits were used, without objection, as evidence. But such an apparent admission cannot control or affect our decision; for, whether the Supreme Court of Illinois erred in its final judgment must be determined by the record before us.

But if it be assumed that the affidavits were accepted in the court below as evidence the result must still be the same; for the affidavits do not satisfactorily establish the fact that the accused was absent from Wisconsin when the alleged crime in question was committed. The charge, as set forth in the requisition papers, was that he committed the crime of larceny

from the person of Hansen on the thirtieth day of September, 1905—no particular hour of that day being mentioned—while the affidavits import nothing more than that McNichols was at Chicago at one o'clock and during the whole of the *afternoon* of that day. The affidavits give no account of the whereabouts of McNichols during the forenoon of the day specified in the papers accompanying the requisition by the Governor of Wisconsin. We know, because everyone knows without the testimony of witnesses, that Kenosha, the place of the alleged crime, is only a short distance—within not more than one hour and a half's travel, by rail—from Chicago. It was entirely possible for the accused to have passed the whole or a larger part of the forenoon of September 30, in that city, and yet have been in Chicago at one o'clock and during the whole afternoon of the same day. So that the affidavits relied on by no means prove the absence of the accused from Wisconsin during the whole of the thirtieth day of September.

Here, it is suggested, that the crime, if committed at all, was committed at *two* o'clock of September 30, while the affidavits show that McNichols was at Chicago at *one* o'clock and during the entire afternoon of that day. So far as the record discloses this suggestion finds no support in anything said or done at the hearing by those who opposed the discharge of the accused. The requisition papers do not state that the alleged crime was committed at two o'clock or at any other specified hour of the day named. The whole foundation for the suggestion was an allegation in the petition for the writ, in this case, to the effect that the accused had *heard* Thomas Hansen testify in another *habeas corpus* proceeding that the crime was committed at two o'clock on the day named. But the record does not show that Hansen or any other person so testified in the present case. Indeed, it does not appear that anyone testified orally before the court—not even McNichols. Upon the record before us it must be taken that McNichols was charged with committing the crime in question on the thirtieth day of September, and that he could have been at

Kenosha during the forenoon of that day, although he may have been, as stated in the affidavits, in Chicago during the whole of the afternoon of the same day. So that the accused entirely failed to overcome the *prima facie* case made by the official documents before the court of his having become a fugitive from the justice of Wisconsin, after committing a crime against its laws on the thirtieth day of September, 1905.

When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States. We may repeat the thought expressed in *Appleyard's case*, above cited, that a faithful, vigorous enforcement of the constitutional and stattory provisions relating to fugitives from justice is vital to the harmony and welfare of the States, and that "while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State."

No error appearing in the record, the judgment of the Supreme Court of Illinois must be affirmed.

*It is so ordered.*