**William P. DeGENNA and Charles Ross Carino**

v.

**Ella T. GRASSO.**

**Civ. No. H 75–202.**

United States District Court,
D. Connecticut.

Jan. 19, 1976.

Judgment Affirmed June 7, 1976.
See 96 S.Ct. 2617.

---

Hubert P. Santos, Hartford, Conn., for plaintiffs.

John F. Mulcahy, Jr., Deputy Chief State's Atty., Robert E. Beach, Jr., Asst. Pros. Atty., New Haven, Conn., for defendant.

Before MESKILL, Circuit Judge, CLARIE, Chief District Judge, and ZAMPANO, District Judge.

## MEMORANDUM OF DECISION

CLARIE, Chief District Judge.

■ The plaintiff, Carino,[1] challenges the constitutionality of Conn.Gen.Stat. § 54–163

---

1. Originally William P. DeGenna, an alleged fugitive from justice from the State of North Carolina, was also a plaintiff. At oral argument, however, the Court was informed that

DeGenna is incarcerated in the State of New York and that Connecticut authorities have no intention of seeking his return to this state. On December 22, 1975, the fugitive from justice

(Rev.1975), which is part of Connecticut's codification of the Uniform Criminal Extradition Act. He claims that his fourth amendment rights will be violated if the Governor of Connecticut, pursuant to § 54–163, signs a warrant authorizing his arrest and ultimate extradition to New Jersey on criminal charges. The plaintiff contends that the Governor, not being a "neutral and detached magistrate," may not constitutionally issue such an arrest warrant. The Court finds this argument to be without merit, and holds that it is constitutionally permissible for a governor to issue a governor's arrest warrant to accomplish the unique purposes of an extradition demand made by the chief executive of another sovereign state.

### Facts

Carino was arrested by the East Hartford police on May 29, 1975 on two charges, conspiracy to commit burglary in the second degree and interfering with a police officer. When originally arrested, he used the alias "Henry H. Decker," but his true identity was shortly established. On May 30, 1975, the East Hartford Police Department received a teletype message from the Bergen County, New Jersey Sheriff's Office that Carino was wanted in New Jersey on charges of bribery, conspiracy, obstructing justice, uttering a forged check, and obtaining money under false pretenses. After learning that New Jersey State Police officers were en route to East Hartford with warrants for Carino's arrest, the East Hartford police requested the issuance of an arrest warrant charging Carino with being a fugitive from justice in violation of Conn. Gen.Stat. § 54–158. The warrant was executed by a judge of the Court of Common Pleas, on June 2, 1975, and Carino was rearrested under the new warrant that same day. He refused to waive extradition, and was released after posting a $10,000 surety appearance bond.

Carino filed the present civil rights action on June 17, 1975, seeking the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284; a declaratory judgment that Conn.Gen.Stat. § 54–163 is unconstitutional; and interlocutory, preliminary and permanent injunctions restraining the Governor of Connecticut, her successors, agents, servants and employees from executing a Governor's warrant for Carino's arrest. On July 10, 1975, the New Jersey Governor formally requested of the Governor of Connecticut that Carino be apprehended and delivered forthwith to New Jersey authorities. This request was accompanied by certified copies of an indictment and supporting papers as required by 18 U.S.C. § 3182, and receipt thereof was acknowledged on July 15, 1975 by the Connecticut Governor.

On August 1, 1975, United States District Judge T. Emmet Clarie denied the defendant's motion to dismiss, granted the plaintiff's motion for a preliminary injunction restraining the Connecticut Governor from signing a warrant for the arrest of the plaintiff, and ordered a three-judge court be convened to hear the constitutional issues raised by the plaintiff. A hearing on the merits was conducted on December 15, 1975.

### Discussion of the Law

The Uniform Criminal Extradition Act has been adopted by Connecticut, forty-six other states, and three territories. It signifies Connecticut's willingness and determination to cooperate with the other states pursuant to their obligation under the federal Constitution to extradite persons charged with crimes in other states. The Fourth Article, § 2(2) of the United States Constitution provides:

> "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be

charge pending against DeGenna was nolled by the Court of Common Pleas in East Hartford. Counsel for the Governor of Connecticut has informed the Court that the State of North Carolina is in the process of withdrawing its demand for the extradition of DeGenna from Connecticut. The action brought by DeGenna is therefore moot.

removed to the State having Jurisdiction of the Crime."

The uniform extradition act itself, as adopted by the states, was designed to conform to and supplement the federal statute, 18 U.S.C. § 3182, so as to implement the aforesaid constitutional provision. § 3182 provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

In Connecticut, the Uniform Criminal Extradition Act is codified as Conn.Gen. Stat. § 54–157 et seq. Among other things, the Connecticut version of the act, § 54–158, imposes a "duty" on the Governor to effect the arrest of a fugitive and deliver him up to the executive authority of the demanding state. It establishes formal requirements for the Governor's recognition of an extradition demand, which must be in writing, accompanied by a copy of an indictment, information, affidavit or judgment of conviction or sentence, charging the person demanded with having committed a crime under the law of the demanding state. It requires authentication by the executive authority of the demanding state, § 54–159, and provides that the Governor may call upon the State's Attorneys in Connecticut to investigate such demand and report on the "situation and circumstances" concerning the person demanded, and whether he ought to be surrendered, § 54–160.

The specific section of the act which is challenged here is identical with § 7 of the Uniform Criminal Extradition Act, and reads as follows:

"If the governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant shall substantially recite the facts necessary to the validity of its issuance." Conn.Gen. Stat. § 54–163.

Connecticut law provides that before a person arrested on said warrant may be delivered over to the agent of the demanding state, he must be presented before a judge of a state court of competent jurisdiction, who shall inform him of the demand made for his surrender and of the crime with which he is charged; furthermore, at that time, he has the right to demand and be represented by legal counsel. The law affords the prisoner the full right and opportunity to apply for a writ of habeas corpus before an impartial judicial authority "to test the legality of his arrest" under the Governor's warrant. § 54–166.

### Abstention

■ The Court will consider the case on its merits, notwithstanding the defendant's arguments that the Court should abstain from deciding the case based upon principles of comity and federalism. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Although such a call for abstention would almost certainly be heeded if the case involved some form of

state criminal proceeding in the Connecticut courts, the uniquely federal character of the extradition process eliminates from this case most of the policy justifications for the *Younger* doctrine of equitable restraint.

"The rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by federal courts,' 401 U.S., at 43 [91 S.Ct. 746, at 750, 27 L.Ed.2d 669] particularly where the party to the federal case may fully litigate his claim before the state court." *Hicks v. Miranda, supra,* 422 U.S. at 349, 95 S.Ct. at 2292, 45 L.Ed.2d at 239.

■ Extradition demands pending before the defendant Governor are not truly "state cases" involving the criminal laws of Connecticut, in which the state's interest would be protected by the *Younger* doctrine. The obligation of a state to extradite an accused person on demand of another state has its source in the federal Constitution, and is regulated by federal legislation. U.S.Const. Art. 4, § 2(2); 18 U.S.C. § 3182.

In its seminal pronouncement on the subject of extradition, *Kentucky v. Dennison,* 65 U.S. (24 How.) 66, 109, 16 L.Ed. 717, 729 (1860), the Supreme Court described a state's duty to extradite accused persons, as stemming from a "compact entered into with the other States when it adopted the Constitution of the United States, and became a member of the Union." That compact, the Court made clear, makes extradition a matter of overriding federal interest and control:

"This duty of providing by law the regulations necessary to carry this compact into execution, from the nature of the duty and the object in view, was manifestly devolved upon Congress; for if it was left to the States, each State might require different proof to authenticate the judicial proceeding upon which the demand was founded. . . ." 65 U.S. at 104, 16 L.Ed. at 728.

The Constitution also places interstate compacts squarely in the federal domain, providing in Article 1, § 10(3) that "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State . . . ." Congress has exercised its authority by giving blanket approval to such compacts which are "for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies . . . ." 4 U.S.C. § 112.

■ Unlike the states' ultimate authority to construe their own laws, it is their duty to administer extradition in accord with the construction placed on the federal constitutional and statutory provisions by the Supreme Court. *South Carolina v. Bailey,* 289 U.S. 412, 420, 53 S.Ct. 667, 670, 77 L.Ed. 1292, 1296 (1933); *Taft v. Lord,* 92 Conn. 539, 543, 103 A. 644 (1918). The paramount interests underlying the extradition process are matters of federal, rather than merely local, concern.

"[E]very State [has] an equal interest in the execution of a compact absolutely essential to their peace and well being . . . ." *Kentucky v. Dennison, supra,* 65 U.S. at 109, 16 L.Ed. at 729.

■ To abstain from acting on the merits of this case in deference to the courts of Connecticut, despite the fact that the legal issue is one of federal law which is not "entangled in a skein of state law," *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622, 626 (1963), would amount to a "wooden application" of the *Younger* doctrine. *Cf. Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969). This is especially true in light of the considerable delay which this litigation has already injected into the extradition process.

"The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him . . . ." *Sweeney v. Woodall,* 344 U.S. 86, 89–90, 73 S.Ct. 139, 140–141, 97 L.Ed. 114, 118 (1952) (footnotes omitted).

See also, *Davis v. Behagen,* 321 F.Supp. 1216, 1217 (S.D.N.Y.1970), *aff'd,* 436 F.2d 596 (2d Cir. 1970), *cert. denied,* 403 U.S. 911, 91 S.Ct. 2211, 29 L.Ed.2d 688. The wisest and most economical course is to reach the merits now, and by so doing make immediate review by the Supreme Court available as a matter of right.[2]

### Plaintiff's Constitutional Claim

The plaintiff's constitutional claim is that the Governor of Connecticut is not a "neutral and detached magistrate," and thus may not issue a warrant for his arrest because the Supreme Court has adopted "a *per se* rule" that warrants may not be executed by officers of the executive branch of government. Plaintiff relies principally on *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), to demonstrate the claimed constitutional violation. Even if these cases could be construed to create such a *"per se* rule" for the issuance of search and wiretap warrants, it would be inapplicable to the radically different process of extradition.

■ The plaintiff Carino was indicted by a grand jury in New Jersey, which found probable cause that he committed a number of serious crimes. Upon receipt of the extradition demand, the Governor of Connecticut cannot make a new assessment of the evidence against Carino and reach an independent finding concerning probable cause. If the papers submitted with the extradition demand comply with 18 U.S.C. § 3182, then the Governor has a constitutional duty to execute the warrant.

2. For similar reasons, the Court will not require the plaintiff to exhaust his state habeas corpus remedies. Plaintiff's counsel has attempted to show that Connecticut law does not permit a person on bail to file a habeas corpus petition, and that habeas corpus proceedings pursuant to § 54–166 after arrest on a Governor's warrant are so limited that constitutional challenges cannot be raised therein. He argues, therefore, that the plaintiff has no present state remedy available, and that the one that would

"It will be observed, that the judicial acts which are necessary to authorize the demand are plainly specified in the act of Congress; and *the certificate of the Executive authority is made conclusive as to their verity when presented to the Executive authority of the State where the fugitive is found. He has no right to look behind them, or to question them, or to look into the character of the crime specified in this judicial proceeding.* The duty which he is to perform is, as we have already said, *merely ministerial* —that is, to cause the party to be arrested, and delivered to the agent or authority of the State where the crime was committed. It is said in the argument, that the Executive officer upon whom this demand is made must have a discretionary executive power, because he must inquire and decide who is the person demanded. But this certainly is not a discretionary duty—that is, to do the act required to be done by him, and such as every marshal and sheriff must perform when process, either criminal or civil, is placed in his hands to be served on the person named in it. And it never has been supposed that this duty involved any discretionary power, or made him anything more than a mere ministerial officer; and such is the position and character of the Executive of the State under this law, when the demand is made upon him and the requisite evidence produced. *The Governor has only to issue his warrant to an agent or officer to arrest the party named in the demand." Kentucky v. Dennison, supra,* 65 U.S. at 106–107, 16 L.Ed. at 728–729. (Emphasis added).

The plaintiff argues that the Supreme Court's determination in *Kentucky v. Den-*

arise after issuance of the Governor's warrant could not take the place of the federal action.

While the authorities cited by plaintiff's counsel fail to firmly establish his claims of Connecticut law, they demonstrate that Connecticut law on these points remains undeveloped. Requiring exhaustion under such circumstances would only risk extensive delay in resolving plaintiff's constitutional claims, and in effecting his extradition to New Jersey.

*nison* that the Governor's function in extradition is "merely ministerial" would be erroneous today, because enactment of the Uniform Criminal Extradition Act has "changed radically" the Governor's role. To support this point, plaintiff cites *Stenz v. Sandstrom*, 143 Conn. 72, 75, 118 A.2d 900 (1955), which states that the Governor's warrant must be based on probable cause that the person charged is a fugitive from justice. That case can hardly show any radical change wrought by the uniform act, however, since it was decided two years before Connecticut adopted that statutory scheme in Conn.Pub.Acts (1957) No. 362. The principle referred to in *Stenz* is an old one, and is explained in *Munsey v. Clough*, 196 U.S. 364, 372, 25 S.Ct. 282, 283, 49 L.Ed. 515, 516 (1905):

> "The proceedings in matters of this kind before the governor are summary in their nature. The questions before the governor, under [the predecessor of 18 U.S.C. § 3182] are whether the person demanded has been substantially charged with a crime, and whether he is a fugitive from justice. The first is a question of law and the latter is a question of fact, which the governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. . . . The issuing of the warrant by him, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to review the action of the governor. . . ."

The governor "is not obliged to demand proof apart from proper requisition papers from the demanding state, that the accused is a fugitive from justice." *McNichols v. Pease*, 207 U.S. 100, 109, 28 S.Ct. 58, 60, 52 L.Ed. 121, 125 (1907).

If a governor issues a warrant without any basis whatsoever for finding that the person demanded is a fugitive from justice, habeas corpus is the proper remedy:

> "When it is conceded, or when it is so conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding State, then the court will discharge the defendant. *Hyatt v. Cockran*, 188 U.S. 691, [23 S.Ct. 456, 47 L.Ed. 657], affirming the judgment of the New York Court of Appeals, 172 N.Y. 176, [64 N.E. 825]. But this court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of the presence in or absence from the State, as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused." *Munsey v. Clough, supra,* 196 U.S. at 374–375, 25 S.Ct. at 285, 49 L.Ed. at 518.

Where the extradition demand is in order, the governor of the asylum state must issue the warrant, *Kentucky v. Dennison, supra*; but if he issues the warrant erroneously, because the demand is deficient in that it fails to show that the person demanded is a fugitive, then the warrant can be defeated by writ of habeas corpus. *Munsey v. Clough, supra*; *McNichols v. Pease, supra*, 207 U.S. at 108–109, 28 S.Ct. at 60, 52 L.Ed. at 124–125. This was the law before the adoption of the uniform act, and it is still the law now. The procedure does not alter the essentially ministerial nature of the governor's function in extradition. We hold that Conn.Gen.Stat. § 54–163 is constitutionally sound.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P. SO ORDERED.