Roy HOLLOWAY a/k/a Jay
Manns, Plaintiff,

v.

Honorable Hugh L. CAREY, Governor of
the State of New York; John Doe, Assistant Counsel of the Governor of the
State of New York; Louis J. Lefkowitz,
Attorney General of the State of New
York; Joseph W. Henneberry, Assistant
Attorney General of the State of New
York; J. Trubee Miller, Assistant Attorney General of the State of New York;
Michael Sackheim, Assistant District
Attorney for the State of New York, N.
Y., Defendants,

and

(Former) Honorable Milton J. Shapp, Governor of the State of Pennsylvania;
(Now) Honorable Richard Thornburg,
Governor of the State of Pennsylvania;
James Golden, Secretary of the Commonwealth of the State of Pennsylvania;
Honorable Judge Charles P. Mirachi,
Court of Common Pleas of the County
of Philadelphia, Penna.; Honorable
Judge Marvin Halbert, Court of Common Pleas for the County of Philadelphia, Penna.; Edgar C. Campbell, Clerk
of Quarter Session Court, Philadelphia,
Pennsylvania; Det. Robert Kane, Badge
No. 9097; Notary Public Shirley Kraft,
State of Pennsylvania, Philadelphia, Defendants.

No. 79 Civ. 2892.

United States District Court,
S. D. New York.

Dec. 14, 1979.

552

Roy Holloway a/k/a/ Jay Manns, pro se.

Robert Abrams, Atty. Gen., New York City, for defendants Hugh Carey, "John Doe," Louis J. Lefkowitz, Joseph W. Henneberry and J. Trubee Miller; Charles S. Kleinberg, Asst. Atty. Gen., New York City, of counsel.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for defendant Michael Sackheim; Meredith Anne Feinman, Mark R. Dwyer, Asst. Dist. Attys., New York City, of counsel.

Edward G. Biester, Jr., Atty. Gen., of the Commonwealth of Pennsylvania, Dept. of Justice, Harrisburg, Pa., for defendants Governor Richard Thornburgh, former Governor Milton J. Shapp, and Mr. James D. Golden, former Secretary of the Commonwealth; Arvin Maskin, J. Andrew Smyser, Deputy Attys. Gen., Harrisburg, Pa., of counsel.

Sheldon L. Albert, City Sol., Philadelphia, Pa., for defendants Charles P. Mirachi, Marvin Halbert, Edgar C. Campbell, Robert Kane and Shirley Kraft; Paul R. Sacks, Asst. City Sol., Philadelphia, Pa., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff, appearing pro se, commenced this action pursuant to section 1983 of the Civil Rights Act [1] for a declaratory judgment and injunctive relief based upon allegations of various violations of his federal constitutional rights. He is presently incarcerated at a state facility at Graterford, Pennsylvania following his extradition to that State from New York State. The defendants are officials of both States and include two governors, a former governor, a former attorney general, a secretary of state, two judges, two assistant attorneys general of New York State, a former assistant district attorney of the County of New York, a clerk of the court in Philadelphia, a Philadelphia police officer, and a notary public residing in Philadelphia.

The defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted, or in the alternative for summary judgment. For the reasons stated below, the motions under Rule 12(b)(6) are granted and the action is dismissed.

From plaintiff's discursive and rambling complaint it appears that he was arrested in New York City by federal agents on October 18, 1976 who stated "they wanted him for a homicide." He was taken to a federal facility where he alleges he was strip-

1. 42 U.S.C. § 1983 (1974).

searched in "a dank cold room" by federal agents. On the following day, he was brought to court for a "hearing" which was adjourned to October 26 to afford the authorities time to produce an extradition warrant. On the adjourned date, a detainer having been lodged against plaintiff based upon a New York State charge of an unidentified nature, he was transferred to the state facility at Riker's Island. Subsequently he was acquitted of the New York charge. However, based upon a fugitive warrant which charged him with murder, he was extradited pursuant to the Uniform Criminal Extradition Act[2] to the Commonwealth of Pennsylvania. He is presently confined to prison in the Commonwealth whether waiting trial or pursuant to a judgment of conviction is not alleged.

Under the most liberal reading of the complaint, the Court is able to glean the following allegations which plaintiff advances purportedly to support his claims against the named defendants:

(1) that plaintiff was arrested without a warrant (although not without probable cause);

(2) that federal officers required him to submit to a strip-search following his arrest on homicide charges;

(3) that an Assistant District Attorney, Mr. Sackheim, who was representing the County of New York, failed to assist plaintiff in the preparation of his case;

(4) that he was forced to spend many hours waiting in court for his case to be heard;

(5) that the presiding judge (State Supreme Court Justice Postell, not named as a defendant) "yelled" at the plaintiff, thereby insulting him, when he failed to reveal his name to the Court;

(6) that plaintiff's court-appointed counsel (not named as a defendant) failed to use "legal maneuvers" to silence Judge Postell;

(7) that the State's attorneys used "false and untrue methods" to oppose plaintiff's attempts to secure habeas relief while he was still incarcerated in New York;

(8) that Governors Thornburgh and Carey, and former Governor Shapp conspired to deny plaintiff his rights; and

(9) that he was improperly extradited from New York to Pennsylvania.

◼ The Court is mindful of its obligation liberally to construe the complaint of a pro se litigant, particularly one who is a prisoner.[3] Nevertheless, even the most meticulous search of the complaint and the most generous construction of the allegations fail to reveal a single cognizable claim. Initially, it should be noted that with respect to six of the thirteen named defendants, other than listing them in the caption of the case, no allegation or other reference is made to them.[4] As to them, plaintiff literally has failed to assert *any* claim whatsoever. Moreover, none of the individuals upon whose alleged conduct plaintiff's claims are grounded—the agents who subjected him to the strip search, the judge who allegedly castigated him, and the court-appointed counsel whose representation is said to have been ineffective—are named as defendants in this action.

◼ With respect to the remaining defendants who are referred to in the body of the complaint, plaintiff has set forth no factual allegation that even remotely suggests actionable conduct. It is well-established in this Circuit that "[c]omplaints relying on the civil rights statutes are plainly insufficient unless they contain some specif-

---

**2.** N.Y.Crim.Proc.Law §§ 570.02–.66 (McKinney's 1971). Both New York and Pennsylvania have adopted the provisions of the Act.

**3.** *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *Cf. Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**4.** An additional, fourteenth defendant is identified in the caption merely as "John Doe, Assistant Counsel of the Governor of the State of New York." Although one other reference is made in the complaint to "the aides" of the three governors, who allegedly were co-conspirators, no other reference is made to "John Doe" or to any "Counsel" anywhere else in the papers.

ic allegations of fact indicating a deprivation of civil rights rather than state simple conclusions." [5] The complaint is utterly devoid of the requisite factual predicate. The defendants who filed papers in opposition to plaintiff's application for habeas corpus relief while he was detained in New York are charged with using "false and untrue methods." The nature of their alleged falsity is not stated. But even assuming that this allegation is true, and that it is pleaded with sufficient specificity, nevertheless it fails to state a claim: the defendants Lefkowitz, Henneberry, and Miller are protected by the absolute immunity accorded to prosecutors acting in their official capacities. [6] The same protection extends to Mr. Sackheim, a former assistant district attorney charged merely with failing to come to the aid of the plaintiff, who was then represented by counsel.

■ The final three defendants are governors who allegedly conspired to deny plaintiff his rights. The complaint contains no indication that these defendants had any knowledge of this plaintiff's predicament, or had any intent to injure or oppress the plaintiff in any respect. In order to state a cognizable claim, the "plaintiff was bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." [7] This the plaintiff has utterly failed to do.

■ If the essence of the claim he intended to advance is that plaintiff was extradited without probable cause to believe he had committed a crime, the complaint never so states. [8] Even if such an allegation had been made, and assuming its truth, it does not follow that the complaint states a cognizable claim against any of the New York defendants. As the Supreme Court stated more than one hundred years ago, the function of executive officers in the state in which a fugitive is found is "merely ministerial." [9] Upon receiving a properly documented request for extradition from a sister state, and determining only that the accused is a fugitive from justice, [10] officials in the asylum state are required to extradite: they "ha[ve] no right to look behind [the demanding state's papers], or to question them, or to look into the character of the crime specified" by the demanding state. [11] In short, they have no duty to exercise independent judgment in assessing the substantive offense with which a de-

5. *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir. 1976). *See Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270, 1275 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Powell v. Workmen's Compensation Bd. of the State of New York,* 327 F.2d 131, 137 (2d Cir. 1964).

6. *See Butz v. Economou,* 438 U.S. 478, 515–16, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

7. *Powell v. Workmen's Compensation Bd. of the State of New York,* 327 F.2d 131, 137 (2d Cir. 1964); *see id.* (citing cases).
Even if the complaint had stated factual allegations which would have implicated the governors in a conspiracy against the plaintiff, as chief executive officers the governors would have been entitled to the protection of a broad, albeit qualified, cloak of immunity for acts taken in their official capacities. *See Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

8. Plaintiff does allege that the defendants "did not act within the law in extraditing" him, and that they did "not comply[ ] with the Uniform Extradition Act." Not a single factual allegation in his complaint supports, or even addresses these claims.

9. *Kentucky v. Dennison,* 65 U.S. (24 How.) 66, 106, 16 L.Ed. 717 (1860). *See also DeGenna v. Grasso,* 413 F.Supp. 427, 432–33 (D.Conn. 1976), *aff'd,* 426 U.S. 913, 96 S.Ct. 2617, 49 L.Ed.2d 368 (1976).

10. *See McNichols v. Pease,* 207 U.S. 100, 109, 28 S.Ct. 58, 52 L.Ed. 121 (1907); *DeGenna v. Grasso,* 413 F.Supp. 427, 432–33 (D.Conn. 1976), *aff'd,* 426 U.S. 913, 96 S.Ct. 2617, 49 L.Ed.2d 368 (1976).

11. *Kentucky v. Dennison,* 65 U.S. (24 How.) 66, 106, 16 L.Ed. 717 (1860). *See also DeGenna v. Grasso,* 413 F.Supp. 427, 432–33 (D.Conn. 1976), *aff'd,* 426 U.S. 913, 96 S.Ct. 2617, 49 L.Ed.2d 368 (1976).

fendant is charged. If they performed their ministerial duties improperly, plaintiff's remedy was through a writ of habeas corpus while he remained confined in New York awaiting extradition.[12] In fact, plaintiff, represented by counsel, commenced such a proceeding in the Supreme Court of the State of New York, New York County which was dismissed on August 3, 1977. Although plaintiff had 30 days within which to apply for a stay of extradition he failed to do so and on September 12, 1977 he was extradited to Pennsylvania. Plaintiff also instituted a habeas corpus proceeding in this Court which was also dismissed since his custodian was beyond the jurisdiction of the Court.

The motion of the defendants to dismiss is granted.

---

12. Although the action of the governors of the asylum state in issuing the warrant is not reviewable, *see People ex rel. Corkran v. Hyatt,* 172 N.Y. 176, 64 N.E. 825, *aff'd,* 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903), a court in a habeas corpus proceeding may review and assess the sufficiency of the papers on which the governor acted in issuing his warrant. *See People v. Sheriff of Oneida County,* 55 Misc.2d 685, 285 N.Y.S.2d 950, 956 (1967), *aff'd,* 30 A.D.2d 644, 291 N.Y.S.2d 780 (1968). The scope of review on habeas is very narrow and is confined to a determination of whether the demanding state's papers present a prima facie case for the return of the defendant. *Munsey v. Clough,* 196 U.S. 364, 373, 25 S.Ct. 282, 49 L.Ed. 515 (1905); *McNichols v. Pease,* 207 U.S. 100, 109, 28 S.Ct. 58, 52 L.Ed. 121 (1907). Indeed, the same standard is applicable even when the demanding state is a foreign nation. *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *Benson v. McMahon,* 127 U.S. 457, 463, 8 S.Ct. 1240, 32 L.Ed. 234 (1888); *Jhirad v. Ferrandina,* 536 F.2d 478 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976).